[No. 9331.    Department One.    February 17, 1911.]

# Etta May Cole et al., Respondents, v. John Gerrick et al., Appellants.[1]

MASTER AND SERVANT—DEATH OF EMPLOYEE—PROXIMATE CAUSE—QUESTION FOR JURY. Where a structural iron worker, standing on a fresh or green wall at the top of a building, had hold of a channel beam for the purpose of assisting to "drift" it into place, and by reason of an error in communicating or obeying a signal to lower the beam, the engineman swung the beam way from the wall, and the iron worker was pulled out before he could let go, and fell, some of the freshly laid bricks giving way under his feet, the proximate cause of the accident was the error in giving or obeying the signal, and the extent to which the insecure wall contributed thereto was a question for the jury.

SAME—CONCURRING CAUSE—LIABILITY. Where the master is liable for the proximate cause, or one of the causes of the accident, it is immaterial that he was not responsible for a contributing cause.

MASTER AND SERVANT—NEGLIGENT SIGNALS—VICE PRINCIPALS. A master is liable for the death of a structural iron worker, who fell through the negligence of coemployees in communicating or obeying a signal to the engineman at a hoisting derrick.

SAME—CONTRIBUTORY NEGLIGENCE—UNSAFE METHODS. A structural iron worker is not guilty of contributory negligence as a matter of law, in going upon a fresh or green wall to assist in "drifting" a beam into place, where he was not warned of the condition of the wall, it was not unusual to go upon the walls, and that was the best position for him to take to render such assistance, although there were other positions he might have taken (GOSE and MOUNT, JJ., dissenting).

Appeal from a judgment of the superior court for King county, Main, J., entered October 31, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death of an employee engaged as a structural iron worker in the erection of a building.    Affirmed.

*Milo A. Root*, for appellants.

*Walter A. Keene*, for respondents.

[1] Reported in 113 Pac. 565.

Parker, J.—This is an action to recover damages from the defendants, alleged to be the result of their negligently causing the death of George Cole, the husband and father of the plaintiffs. A trial before the court and a jury resulted in a verdict and judgment in plaintiffs' favor, from which the defendants have appealed.

The argument of learned counsel for appellants is directed almost wholly to the alleged error of the trial court in denying their challenge to the sufficiency of the evidence to support the verdict and judgment in respondents' favor, made at the close of the trial and renewed in their motions for judgment notwithstanding the verdict and for a new trial.

The evidence was in serious conflict upon some of the important questions, but a careful review of the record convinces us that there was competent evidence sufficient to warrant the jury in concluding that the following facts were established. On February 19, 1910, the appellants were contractors engaged in constructing the iron framework of the Fidelity Trust building in Tacoma, and George Cole, the deceased, was then employed by them as a structural iron worker on the building. On that day Cole fell from the top of the north wall of the building, which was then up to the thirteenth floor, to the roof of another building some six stories lower, resulting in his death. At that time the iron framework and walls of the building had been completed up to the twelfth floor. The north wall had been completed up to the thirteenth floor, and the iron framework had been put in place on the thirteenth floor on a considerable portion of the north half of the building. There was placed about the center of the building on the twelfth floor a large derrick which was used for hoisting the material from the street, and also for placing the material at various points on the building as became necessary. This derrick had a long swinging boom, from the end of which hung the cable for handling the material. This cable ran from the iron or material to be handled, through a pulley at the outer end of the boom, down to

the foot of the derrick through a pulley, and on down to the engine situated six stories below. Another cable, permanently attached to the outer end of the boom, ran to the top of the derrick through a pulley and on down to the engine. By this cable the boom could be lowered so as to extend the outer end of it over the edge of the building, or could be raised so as to bring cable suspended from its outer end over any point between the foot of the derrick and the outer wall. Another cable ran from the derrick down to the engine, adjusted in such manner that the boom could thereby be swung around over any part of the building. The engine supplied the power which controlled all three of these movements. These various movements were controlled by the men in charge of the engine, in obedience to signals communicated to them by a bell and wire extending up to the story at which the work was progressing.

It will thus be seen that the material could, by this derrick, be placed at any point on the story being constructed, provided there was nothing to interfere with the raising, lowering or swinging of the boom. Immediately preceding the falling of Cole off of the north wall, he and another iron worker named Mitchell, and the foreman, were attempting to place in permanent position an iron channel beam, about twelve feet long and weighing about 300 pounds, along the inner edge of the north wall at the thirteenth floor. At that time the framework of that floor on the north portion of the building so interfered with the lowering and swinging of the boom that it was not possible to suspend and lower this channel by the cable from the outer end of the boom exactly over the final resting place of the channel. The nearest it could be so suspended over its final position was about six feet to the west and about two feet to the south inside the wall. When put in position it was to be attached by rivets or bolts at its easterly and westerly ends to I beams resting upon the wall, and running at right angles thereto towards the interior of the building. These I beams were then already in place. Cole

was to guide the easterly end of the channel into place, while Mitchell was to guide the westerly end into place, as the channel would be lowered. The channel had reached a position so it was suspended from the outer end of the boom at a point as nearly as possible over its final resting place; that is, about six feet west and about two feet south, parallel with the wall, and some five or six feet above the wall. It hung some thirty-five feet below the outer end of the boom, which enabled the men to move it to its proper position while being lowered. This process is called "drifting," and except in handling all but very heavy pieces, renders it unnecessary to have them suspended and lowered with any great degree of precision over their final resting place.

While the channel was in this position, the foreman, standing on the westerly I beam immediately to the south of the suspended channel, took hold of it with his hands; while Mitchell, standing partly on the wall end of the westerly I beam and partly on the wall, being on the north side of the suspended channel, took hold of it with his hands. At the same time Cole stepped from his position at the wall end of the easterly I beam along the top of the wall to a point about half way between the I beams, which were about twelve feet apart, that being the length of the channel, for the purpose of taking hold of the easterly end of the channel and assisting in drifting it to its proper position as it would be lowered. He there took hold of the channel as the others did, reaching towards the interior of the building about two feet, where it was suspended. The foreman then communicated to one Lee, who stood in a position some distance away towards the foot of the derrick, a signal to lower the channel. This was given by word of mouth, was plainly heard by Mitchell, and must have been heard by Cole, who was then not over ten feet from the foreman. Lee in turn communicated a signal to one Huston, the bell man, who stood by the bell wire at the foot of the derrick, and who in turn communicated a bell signal to the men in charge of the engine below. The engine and the men

in charge of it were entirely beyond the view of those engaged in placing the channel. Neither could they hear the bell at the engine when a signal was given with it, so they could not tell the nature of the signal received by the men at the engine by hearing it. By some error occurring along the line of communication, or in obeying the signal, the men at the engine, instead of lowering the channel, swung the boom so as to carry the channel away from the wall towards the interior of the building, unexpectedly pulling it out of the hands of Mitchell and Cole. By this unexpected movement Cole was pulled towards the inside of the building before he could let go, and in attempting to regain his balance he fell outside of the wall, resulting in his death.

The wall had been built only the day before. It was green and had not yet set, so the bricks were easily displaced; and in attempting to regain his balance, Cole's feet loosened a couple of bricks, thus rendering his footing less secure. There is evidence tending to show that this condition of the wall was known to the foreman, but there is no evidence that Cole knew of it, or that its appearance indicated such insecure condition. There was a scaffold, which had been used by the masons in building the wall, some three to five feet below its top on the inside of the wall. The structural iron workers did not use scaffolding in their work, and there is no evidence to indicate that there was any necessity of scaffolding for their work. It does not appear that there was anything unusual in Cole going upon the wall, though there is some conflict in the evidence as to the necessity of Cole going upon the wall at this particular time.

The communicating of the wrong signal to the engineer, or the error in obeying the signal if it was correctly given, thereby causing the channel to swing away from the wall instead of lowering it, while Cole stood there having hold of it with his hands, is the principal act of negligence relied upon by respondents. They also rely upon the alleged negligence of appellants in attempting to place the channel before the wall

had sufficiently set to make it a safe place to stand upon, in view of the probability of the iron workers going upon the wall in placing the channel. The appellants rely in defense upon the alleged contributory negligence of Cole in going upon the wall while it was in this unsafe condition, as well as the want of sufficient proof to establish their own negligence.

It seems to us that the question of whether or not the channel was swung away from Cole as the result of an erroneously communicated signal, or in disobedience of a proper signal, when he had hold of the channel while standing on the wall, was the proximate cause of his falling, and as to what extent the insecure condition of the wall, by reason of its recent construction, contributed to his fall, were questions of fact which cannot be decided by us as matters of law in the light of this record.

It is contended that the appellants were not responsible for the condition of the wall, since the building of it was no part of their contract. We think there was good ground for contending that appellants' foreman knew of the unsafe condition of the wall, and also knew that in placing this channel the iron workers would likely walk upon the wall as Cole did, and also that Cole was not warned of the condition of the wall. However, even if appellants were not responsible for the condition of the wall as a concurring cause of Cole's fall, that fact would not relieve appellants if the jury believed the fall of Cole would not have occurred but for the error in communicating or obeying the signals, thereby causing the wrong and unexpected movement of the channel. And we have seen, this question was for the jury. This contention is well answered by the mere statement of the elementary rule found in 2 Labatt, Master & Servant, at § 813, as follows:

"Where several causes concur to produce certain results, any of them may be termed 'proximate,' provided it appears to have been an efficient cause. The general rule applicable to all cases illustrating this situation, except those in which the contributory negligence of the servant himself is involved, is that, in order to establish the right of action, it is merely

necessary to show that one of the co-operating causes of the injury was a culpable act or omission for which the master was responsible. This rule holds good whether the other causes were also defaults for which he was responsible, or were due to some event or some conditions for which he was not required to answer."

To the same effect is Black's Law and Practice in Accident Cases, § 21. The liability of the appellants growing out of the wrong communication of, or erroneous acting upon, signals under such conditions as this evidence tends to prove, we think has been fully established by former decisions of this court. *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac. 765.

It is contended that Cole was guilty of contributory negligence in going upon the wall when he could have stationed himself and waited on the wall end of the easterly I beam where he was to guide that end of the channel into place, or that he could have walked on the scaffold used by the masons on the inside of the wall a few feet lower down. In other words, it is insisted that he chose an unsafe way when there were two other safe ways. We cannot so decide, as a matter of law, in this case. The going upon the wall was clearly not an unusual thing, nor, of itself, regarded as particularly dangerous by these men in this class of work; and there was no evidence indicating that the appearance of the wall indicated its unsafe condition. It is true Cole was not directly ordered to go there; but he evidently went there because he deemed it his duty to assist in drifting the channel over to its proper position while being lowered, rather than to wait at the wall end of the easterly I beam for the others to drift the channel over to him to put into place. Even the foreman's testimony does not indicate that he regarded this act of Cole's as unusual or particularly dangerous or out of the line of his duty, except for the fact that the wall was not yet set, thus furnishing an insecure footing. It is plain that Cole, from his position on the easterly I beam, could not reach the channel as sus-

pended, and it was only by going upon the wall as he did that he was enabled to assist in drifting the channel into place. Under these circumstances we are not able to say, as a matter of law, that he was guilty of contributory negligence. The evidence tends to show that, by getting down upon the scaffold, Cole could not have reached the channel by reason of the height at which it was suspended, until it was lowered nearly to its resting place. This would not only have been an unusual thing for him to do, but he could not have rendered as much assistance in drifting it to its place as he could upon the wall.

We are of the opinion that neither the question of appellants' negligence, or Cole's contributory negligence in choosing an unsafe way when other safe ways were open, could be decided as matters of law, but were properly left to the jury.

We are not able to say that other assigned errors were prejudicial to appellants' rights, since we are not cited to pages of the record enabling us to properly discuss them, besides they are submitted to us practically without argument.

The judgment is affirmed.

DUNBAR, C. J., and FULLERTON, J., concur.

GOSE, J. (dissenting)—It seems clear to me that the death of the deceased was due to his own negligence. Two safe ways were open to him. He could have performed his work in safety from either the I beam or the scaffold inside the wall. The channel was lowered by machinery. It could be done in no other way. The deceased merely assisted in "drifting" and adjusting it to place. I therefore dissent.

MOUNT, J., concurs with GOSE, J.