[No. 15205.  Department Two.  May 14, 1919.]

RUDOLPH C. LANGE, *Respondent,* v. SPOKANE & INLAND EMPIRE RAILROAD COMPANY, *Appellant.*[1]

MASTER AND SERVANT (92, 170)—ASSUMPTION OF RISKS—QUESTION FOR JURY—SIGNALS.  The assumption of risks by one employed in loading timbers on cars, injured through a sudden movement of the train without warning, is a question for the jury, where there was evidence of two witnesses who had worked only that day that it was customary to give signals by blasts of the whistle when the train was about to be moved.

SAME (76, 77)—FELLOW SERVANTS—SIGNALS.  The giving of signals of the movement of a train is not, as a matter of law, a mere detail of the work that can be delegated to a fellow servant, where there was evidence that it was necessary for the protection of a crew loading timbers on the train as it was moved from pile to pile.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 14, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in loading bridge timbers.  Affirmed.

*Graves, Kizer & Graves,* for appellant.

*Lee & Kimball,* for respondent.

PARKER, J.—The plaintiff, Lange, commenced this action in the superior court for Spokane county, seeking to recover damages for personal injuries alleged to have been suffered by him from the negligence of the defendant railroad company while he was in its

[1]Reported in 180 Pac. 924.

employ assisting in the loading of bridge timbers on one of its work trains. Trial in that court sitting with a jury resulted in verdict and judgment in favor of plaintiff, from which the defendant has appealed to this court.

Appellant owns and operates an electric railway. At the time respondent was injured, he was employed by appellant, assisting in loading upon one of its work trains bridge timbers which had been left at short intervals along its main line track, in Whitman county. The train consisted of a motor and three flat cars. Upon the car next to the rear one, there was a derrick with a boom which could be swung out over the side of the train, and by means of tackle attached thereto, the timbers were lifted from the ground, swung over the cars either forward or to the rear of the derrick car, and lowered in place upon the cars. The running of the train was under the direct charge of an ordinary train crew consisting of a conductor, a motorman, and two brakemen, though they were to move the train to such places along the track as the loading foreman should direct, for the purpose of gathering up and loading the timbers. The loading crew consisted of the foreman, the operator of the derrick, and several workmen, of whom respondent was one. The train would be stopped opposite a pile of timbers, and the loading foreman would stand on the ground at the side of the train near the timbers to be loaded, and direct, principally by motions of his hands, the operation of the derrick; and also the movement of the train from one pile of timbers to another.

Respondent's duty, at the time he was injured, was to stand on and near the front end of the rear car just back of the main structure of the derrick, which placed

him entirely out of view of the motorman, and assist
in putting the timbers into place upon the cars, as
they were lowered by the derrick. Just before he was
injured, the last one of the timbers of the pile then
being loaded had been lowered into place upon the
rear car, and the boom of the derrick again swung
out as if to get another timber, the operator of the
derrick seemingly not knowing that all of that pile
had been placed upon the car. The foreman directed
the derrick operator to swing the boom back over the
car, with a view of moving the train backward to the
next pile of timbers to be loaded. He then motioned
to the motorman to so move the train. The train was
started in compliance with his direction, no sound
signal of any kind being given warning the workmen
that the train was about to be moved. Respondent was
then standing on the timbers very near the end of the
car next to the derrick car, having just finished the
placing of the last timber arriving upon the car, and
not knowing that the train was about to be moved, lost
his balance by reason of the train's sudden movement,
and fell between the two cars, just outside of the rails
of the track, receiving the injury for which he seeks
recovery. As the boom came back over the car, re-
spondent did not see the foreman direct the motor-
man to move the train. Indeed, the boom so ob-
structed his view that he could not have seen the fore-
man without making some special effort to do so. Re-
spondent and one of his witnesses testified in sub-
stance, that it was the custom for the motorman to
give two blasts of the whistle when the train was about
to start ahead, or three blasts when the train was
about to start backward, so that the workmen would
have notice and could avoid the danger incident to
starting the train. This testimony seems to be based

only upon the experience of these two witnesses during the several hours' work on that day prior to respondent's being injured, as it was the first day they had worked upon the train, though they had worked prior thereto elsewhere for appellant. One of appellant's witnesses testified that it was the custom in the movement of work trains to blow the whistle whenever the train is to be moved some considerable distance, say fifty feet or more, but not when the train is to be moved only a few feet, as in this instance.

It is first contended by counsel for appellant that respondent, by entering the employment he was in, assumed the risk of being injured in the manner he was injured; and that the trial court erred in refusing to so decide as a matter of law, in its denial of motions timely made asking that the case be taken from the jury upon that ground. The case was tried upon the theory that the question of respondent's assuming the risk of such an accident as resulted in his injury was dependent upon his right to rely upon the sound signals from the motorman to inform the workmen that the train was about to start forward or backward, the trial court instructing the jury upon the subject of assumption of risk, as follows:

"You are instructed that, if you find from the evidence that the defendant had adopted a method of operation of its train, requiring the giving of signals by the motorman, whether in response to signals received by him from the foreman or other employee of the defendant, which signals were given by the ringing of a bell or the blowing of a whistle, or in such other manner as would inform those engaged in work upon and about the train that the train was about to move either forward or backward, and that said method of operation was known to the plaintiff, and that the plaintiff relied upon the same, and if you further find from the evidence that, upon this occasion, no signal

was given, and if you find from the evidence that the plaintiff was injured by reason of the fact that no such signal was given, then I charge you that the plaintiff did not assume the risk of injury from the moving of the train without the giving of signals, but that the defendant would be liable under such conditions for such injury as you may find resulted to the plaintiff from the failure or neglect of the defendant to give such signal.''

The trial court also refused to instruct the jury, as requested by counsel for appellant, that respondent and the motorman were fellow servants. In other words, the trial court refused to so decide as a matter of law. The principal argument of counsel for appellant touching the giving and refusing to give these respective instructions, and the whole of their argument directed against the court's refusal to take the case from the jury, have to do, in their last analysis, only with questions of fact; as to which, in the light of the evidence, we think reasonable minds might reach different conclusions. It is true, as pointed out by counsel for appellant, that the custom of giving sound signals to employees of the starting of the train was testified to by respondent and his witness from their experience as employees that day only. But whether or not the custom, and respondent's knowledge thereof, were sufficiently proven to warrant him in relying thereon, instead of being constantly on guard against the sudden movement of the train, we think was, under all the circumstances shown, a question for the jury to decide. The jury might well have believed that, during the several hours' work preceding respondent's injury, the signals were given with such frequency just before the moving of the train each time, as to induce him to believe that he could safely rely thereon; and that the conditions of the

work were such that signals of that nature to the workmen, warning them of the starting of the train, were likely to be required by appellant. We think it cannot be decided as a matter of law, in view of all the surrounding circumstances, that the duty of giving the signals was a mere detail of the work performable by the motorman as respondent's fellow servant. *Comrade v. Atlas Lumber & Shingle Co.*, 44 Wash. 470, 87 Pac. 517; *Anderson v. Globe Nav. Co.*, 57 Wash. 502, 107 Pac. 376; *Norman v. Shipowners Stevedore Co.*, 59 Wash. 244, 109 Pac. 1012; *Jacobsen v. Rothschild*, 62 Wash. 127, 113 Pac. 261; *Grosgean v. Denny-Renton Clay & Coal Co.*, 62 Wash. 196, 113 Pac. 570; *Cole v. Gerrick*, 62 Wash. 226, 113 Pac. 565.

The evidence may not show, as argued by counsel for appellant, a condition which required appellant to have a system of signals prior to the starting of the train each time it was moved from pile to pile of timbers, so the workmen would be warned of such starting. But that was not the theory of counsel for respondent, their theory being that there was in fact a system of signals used by appellant upon which respondent had a right to rely.

The contention that respondent was guilty of contributory negligence as a matter of law; and other minor contentions made in appellant's behalf, we think are without merit, and that the case does not call for further discussion.

The judgment is affirmed.

CHADWICK, C. J., FULLERTON, MOUNT, and HOLCOMB, JJ., concur.