'Argued September 23, decided September 30, 1913.

# EVANS v. PORTLAND RY. L. & P. CO.*

(135 Pac. 206.)

**Master and Servant—Master's Liability—Place of Work—Guard-rails—"Other Structure More Than 20 Feet from the Ground or Floor."**

Under Laws of 1911, page 16, Section 1, providing that all owners engaged in the construction of buildings shall see that all scaffolding, staging, "or other structure more than twenty feet from the ground or floor" is provided with safety rails or other contrivance, and that generally those in charge of any work involving risk to employees shall use all practical protection for safety, limited only by the necessity for preserving the efficiency of the structure, and Section 5, abrogating the fellow-servant rule in cases of defective structures and negligence of foremen, the words "or other structure" were not limited to the class of "scaffolding" and "staging," but a spur track on a trestle more than 20 feet from the ground, which though built as a railroad had been used only as a means of erecting a power-house, was *pro hac vice* a scaffolding, staging, or platform, so that, where its foreman ordered plaintiff to perform labor thereon, defendant was bound to maintain a guard-rail until the power-house was completed or until there was no other use for the trestle as a means thereto.

[As to the liability of an employer for injuries to employees caused by fall of scaffolding, see note in Ann. Cas. 1913B, 1123.]

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE MOORE.

This is an action by James Evans, a servant, against the Portland Railway, Light & Power Company, a master, to recover damages for a personal injury. The complaint charges in effect that the defendant was negligent in failing to adopt rules as to the manner of performing the work in which the plaintiff was engaged when he was hurt, and in omitting to place a hand-rail or other protection on a trestle from which he fell and was injured.

---

*On the question what are scaffolds or structures within statutes relating to safety of scaffolds in connection with structures, see note in 30 L. R. A. (N. S.) 30.                    REPORTER.

The answer denies the negligence alleged, and for separate defenses avers that the risk was assumed by the plaintiff, that his own negligence contributed to the injury, and that his hurt was caused by the carelessness of a fellow-servant.

The reply put in issue the allegations of new matter in the answer, and, the cause being tried, the plaintiff secured a judgment for $2,500, and the defendant appeals.                                    Affirmed.

For appellant there was a brief over the names of *Wilbur & Spencer, Mr. F. J. Lonergan* and *Mr. Leslie Craven,* with an oral argument by *Mr. Craven.*

For respondent there was a brief over the names of *Mr. Isham N. Smith, Brownell & Stone* and *Mr. John F. Logan,* with an oral argument by *Mr. Smith.*

Mr. Justice Moore delivered the opinion of the court.

It appears from a transcript of the testimony that the defendant erected at Portland, Oregon, a power-house a part of which was constructed of concrete. From an adjacent railway line the defendant also built a spur track on sharp reverse curves, but so arranged that freight-cars could be run from the main line south into the power-house through a door near the northwest corner of that building. This spur track at and for some distance north of the power-house rested on timbers supported by piling driven into the ground. From one tier of capped piling to another were placed heavy timbers across which were laid ties, and to the top of the latter the rails forming the track were spiked. The plaintiff on November 25, 1910, was in the defendant's employ and engaged in carrying in his arms or on his shoulders, from the specified door

along the spur track about 12 or 15 feet and throwing from the trestle, lumber that had been used in making molds, into which the cement mixture, used in constructing the building, had been poured and allowed to remain until it had hardened, when the forms were torn down and the material of which they were made was carried out of the building and cast to the ground. A water-pipe beneath the trestle having been broken near the building by throwing upon it lumber used in making the forms, the defendant's foreman in charge of the work commanded the plaintiff to carry the material he was removing from the building along the spur track about 12 or 15 feet and fling it to the ground, where employees were then engaged in gathering and burning such refuse. The plaintiff testified that when, with several pieces of scantling on his shoulder, he had reached the proper place on the trestle from the east side of which he was about to throw the waste material, some person from a window in the power-house immediately above the entrance of the spur track into the building shouted, "Look out below!" whereupon the witness suddenly cast the pieces of studding, and in doing so a nail in the lumber caught in his clothing, causing him to lose his balance, precipitating him to the ground, a distance of 23 feet, whereby he was injured; that when he was hurt there was no guard-rail on the end of the ties on the spur track; that a handrail or some other contrivance could have been put up at the place at which he fell without impairing the efficiency of the structure, and thus have prevented the injury; and that no rules had been promulgated by the defendant with respect to the manner of performing such service.

The testimony of the defendant's witnesses is to the effect that the spur track is about 10 feet wide; that fastened near the end of the ties and about 2 feet out-

side the rails forming the track is a wooden guard 6 by 8 inches, to keep the ties in place and to prevent the cars from running off the trestle in case they left the track; that some of the freight-cars upon which electric machinery is transferred into the power-house are so wide that, owing to the sharp curves of the spur track, bricks have been knocked out of the 12-foot entry into the building, and it would be impossible to maintain a guard-rail or other like contrivance on the end of the ties because the steps of such cars would, on the sharp bends of the track, knock down any like protection if it had been erected; that directly above the spur track where it enters the power-house there is no window, but the opening referred to is 10 feet west of the nearest rail; that lumber dropped from that window would fall 8 feet west of the track; and that it would be impossible for any person to throw material used in making forms for concrete from the window to the place where the plaintiff was standing just before he fell.

It is contended by defendant's counsel that an error was committed in refusing to grant a judgment of nonsuit when the plaintiff had introduced his testimony and rested. As the chief grounds urged in support of the motion are also assigned as errors to parts of the court's charge, the latter specifications will alone be considered.

The instructions to the giving of which exceptions were taken by defendant's counsel are to the effect that the testimony disclosed that plaintiff's cause of action was governed by the provisions of Chapter 3, Laws Or. 1911, page 16, and generally known as the Employer's Liability Act; that such statute declares that when any structure is erected more than 20 feet above the ground and is used for scaffolding purposes it is the duty of the master to place thereon a guard-

rail, provided such means for the protection and safety
of the life and limbs of the servant do not impair the
efficiency of the structure; that, if the defendant knew
the trestle was being used by its servants as a place
from which to throw lumber taken from the power-
house, the defendant was bound to place along such
platform a guard-rail, if it did not impair the efficiency
of the trestle, which was the first question to be deter-
mined; that, if the jury found it was the duty of the
defendant to put up such protection and there had
been a failure in this respect, the plaintiff, by remain-
ing in the service, did not assume the dangers incident
thereto; and the legal principles of assumption of risk
and contributory negligence had been abrogated by the
act referred to; and, though by such enactment a ser-
vant might be guilty of that degree of contributory
negligence which would bar a recovery of any damages
for an injury sustained, such question, however, was
not a matter of law to be decided by the court, but was
an issue of fact to be determined by the jury in esti-
mating the damages to which an employee might be
entitled.   The court also declined to give instructions
requested by defendant's counsel with respect to the
converse of each of these legal propositions, and ex-
ceptions were taken to such refusals.

In the title of the act as printed, a line was evi-
dently omitted by inadvertence.   The correct inscrip-
tion should read as follows: "An act providing for the
protection and safety of persons engaged in the con-
struction, repairing, alteration, or other work, upon
buildings, viaducts, tanks, stacks and other structures,
or engaged in any work upon or about electrical wires,
or conductors or poles, or supports, or other electrical
appliances or contrivances carrying a dangerous cur-
rent of electricity or about any machinery or in any
dangerous (occupation, and extending and defining the

liability of employers in) any or all acts of negligence, or for injury or death of their employees, and defining who are the agents of the employer, and declaring what shall be a defense in actions by employees against employers, and prescribing a penalty for a violation of the law'': Oregon Election Pamphlet for November, 1910, page 82.   The words left out of the printed title are included within the parentheses as indicated in the language last quoted.

The enactment in question as far as deemed involved herein follows:

''All owners * * engaged in the construction * * of any building * * shall see that all * * scaffolding, staging or other structure more than twenty feet from the ground or floor shall be secured from swaying and provided with a strong and efficient safety rail or other contrivance, so as to prevent any person from falling therefrom * * and generally all owners * * having charge of * * any work, involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure * * and without regard to the additional cost of suitable material or safety appliances and devices'': Section 1.

''In all actions brought to recover from an employer for injuries suffered by an employee the negligence of a fellow-servant shall not be a defense where the injury was caused or contributed to by any of the following causes, namely: Any defect in the structure, materials, work, plant or machinery of which the employer or his agent could have had knowledge by the exercise of ordinary care; the neglect of any person engaged as superintendent, manager, foreman or other person in charge or control of the works, plant, machinery or appliances; the incompetence or negligence of any person in charge of, or directing the particular work in which

the employee was engaged at the time of the injury or death; the incompetence or negligence of any person to whose orders the employee was bound to conform and did conform and by reason of his having conformed thereto the injury or death resulted; the act of any fellow-servant done in obedience to the rules, instructions or orders given by the employer or any other person who has authority to direct the doing of said act": Section 5.

"The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage": Section 6.

It will be seen that the instructions given practically accord with the language of the Employer's Liability Act. It is argued by defendant's counsel, however, that the phrase "or other structure more than twenty feet from the ground or floor," as used in the statute under consideration, comprises general words following the enumeration of "scaffolding" and "staging" which are words of particular and specific meaning, and, such being the case, the general words "or other structure" should not be construed in their broadest signification, but ought to be interpreted as applying only to the class of "scaffolding" and "staging" which are the things specifically mentioned as antecedents in the act. As a usual rule for ascertaining the general import of language employed in a statute, it must be admitted that there is much force in the construction invoked; but, however this may be, it is believed that the exception to the usual precept, which was recognized by the trial court, is controlling. As we understood the testimony, all of which has been carefully examined, the power-house had not been completed when the plaintiff was injured. The spur track, though built as a railroad, had never been used as such prior to the accident, except that push-cars had been

66 Or.—39

propelled along the rails by laborers in transporting material to be used in the erection of the building.

Until the trestle was used for the purpose for which it was built and as long as it was employed as a means of erecting the power-house, it was *pro hac vice* scaffolding, staging, or, as denominated by the court, a platform upon, along, and over which the defendant's foreman in charge of the work directed the plaintiff to perform his labor; and, as the place from which he fell was more than 20 feet above the surface of the ground it was incumbent upon the defendant to place and maintain a guard-rail or other contrivance until the building was completed or until there was no further use for the trestle as a means to that end.

It is believed that no error was committed in charging the jury as complained of or in refusing to give the instructions requested.

It follows that the judgment should be affirmed and it is so ordered.     Affirmed.

Mr. Chief Justice McBride, Mr. Justice Burnett and Mr. Justice Ramsey concur.