Argued December 22, 1913, decided January 6, 1914.

# BROWNING *v.* SMILEY–LAMPERT LUMBER CO.*

(137 Pac. 777.)

**Master and Servant—Injuries to Servant—Fellow-servants—Competency.**

1. If a master is aware that a servant is unfit for the service in which he is employed, so as to endanger other servants, it is the master's duty to discharge the unfit servant, and, if he fails to do so, another servant injured by negligence of the unfit servant may hold the master liable.

[As to who is "incompetent" servant within law of master and servant, see note in Ann. Cas. 1912C, 96.]

**Master and Servant—Injuries to Servant—Fellow-servants—Competency.**

2. A master is charged with knowledge of the common reputation in the community of a servant who has been in his employ for a long time.

[As to evidence of general reputation of fellow-servant for incompetency in action by servant against master, see note in 18 Ann. Cas. 927.]

---

*The question of the master's duty as to the selection, employment and retention of fellow-servants is discussed in an extensive note in 48 L. R. A. 369. And as to whether breach of duty to employ or retain none but competent servants may be inferred in fact from their incompetency, see note in 20 L. R. A. (N. S.) 322. And for evidence of reputation to show incompetency of servant or master's knowledge thereof, see note in 33 L. R. A. (N. S.) 751.

As to master's statutory liability for negligence of employees exercising superintendence, see note in 58 L. R. A. 33.   REPORTER.

**Master and Servant—Injuries to Servant—Fellow-servants—Competency.**

3.  It is error to take from the jury a case for injuries to a servant, where there is evidence of negligence in the selection or retention of the coservant whose act caused the injury.

> [As to how far servant may rely on knowledge of master concerning risks, see note in 24 Am. St. Rep. 320.]

**Master and Servant—Injuries to Servant—Fellow-servants—Competency.**

4.  The measure of care demanded of a master in the selection and retention of servants is commensurate with the danger reasonably to be apprehended from the instrumentalities employed in the required labor.

**Master and Servant—Injuries to Servant—Fellow-servants—Employers' Liability Act.**

5.  An action for injuries to a servant from negligence of a head sawyer under whom plaintiff was working in failing to observe a signal from plaintiff and causing a log to roll against plaintiff's hand falls within the Employers' Liability Act (Laws 1911, p. 16), Section 1, requiring all owners, contractors, etc., to use every precaution practicable, and Section 5, providing that the negligence of a fellow-servant is not a defense where the injury is caused by the incompetence or negligence of any person in charge of the machinery or of particular work at the time of the injury; the head sawyer in such a case being a vice-principal and not a fellow-servant.

**Master and Servant—Injuries to Servant—"Foreman."**

6.  A "foreman" is a laborer with power to superintend those working under him, and a head sawyer is a foreman over one operating a carriage in a sawmill who is directed to obey his instructions.

From Clatsop: JAMES A. EAKIN, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This is an action by Randal Browning against the Smiley-Lampert Lumber Company, for damages for a personal injury.   The cause was tried before a jury. At the close of plaintiff's evidence, the court entered a judgment of nonsuit, from which plaintiff appeals.

The plaintiff claims that the injury was inflicted through the negligence of the defendant, acting by Henry Lee, the head sawyer, in the former's sawmill where plaintiff was hurt; that the head sawyer had the full direction and control of the machinery for loading logs upon the carriage.   Plaintiff alleges, in

effect, that, in carrying out the objects of the corporation, the defendant owned, operated and controlled a certain sawmill, and that Henry Lee was the head sawyer therein; that, at the time of the happening of the injuries hereinafter stated, the plaintiff was a servant of and working for the defendant, and was subject to the orders, dominion, and control of Henry Lee; that the plaintiff was employed by the defendant about June 11, 1912, as a dogger; that his duties required him to adjust dogs or instruments by which logs are held in place upon the carriage while being sawed under the immediate supervision of Henry Lee; and that, among other duties, he was to see that no sticks or chunks of wood, or other substances, were on the carriage between the blocks and the log; that the defendant adopted a system of signals between the head sawyer and the plaintiff; that under this system the head sawyer was required not to throw the logs against the ratchet until after he was notified to do so by the plaintiff when adjusting the dogs and moving the sticks and other particles from the carriage; that a certain stick inadvertently and without the plaintiff's fault got on the carriage between the block and the log then being adjusted; that Henry Lee failed, refused and neglected to follow any signal from plaintiff; that while plaintiff was engaged in attempting to remove the stick, defendant, acting through Henry Lee, without notice or warning to the plaintiff, and in disregard of plaintiff's safety, by means of certain instrumentalities known as "niggers," threw a log with great force and violence against the head block and crushed plaintiff's hand, injuring the same; that at said time plaintiff and Henry Lee were pursuing their work under the direction and the command of the latter while he was the foreman and in charge of the particular instrumentality, to wit, the log carriage whereby plaintiff was injured. It is also alleged that

by reason of his violent temper Henry Lee was incompetent and unfit to have control of the plaintiff or to handle the instrumentalities intrusted to him; that he acted quickly and impulsively and without regard to the safety of the plaintiff; that prior to the injury defendant had notice and knowledge and means of knowledge of such incompetency and unfitness; that plaintiff was unaware of the same.

The defendant answered, admitting its corporate capacity and its operation of a sawmill, but denying the allegations of liability, and further pleaded: (1) The assumption of risk; (2) the negligence of a fellow-servant; and (3) that the alleged injuries were due to the carelessness and negligence of plaintiff, and could not have been prevented by the defendant by the exercise of ordinary care.

Plaintiff replied, putting in issue the new matter of the answer. At the trial the plaintiff testified in his own behalf upon the points in issue upon this appeal substantially as follows: After detailing the character and extent of the injuries, plaintiff stated that it was his duty as a dogger to ride upon the carriage and throw the instruments known as dogs into the log, after Mr. Henry Lee, the sawyer, had placed the log upon the carriage; that, also, if he happened to see any portion of material that might have been inadvertently flopped over on the carriage lying on the same by the logs, it then became his duty and he was instructed to hold up his hand as a signal indicating that there was some obstruction in the way, and for Lee not to touch the nigger nor push the log on the rollway; that at the time of the accident he observed certain material in the way of placing the log upon the carriage, and that he gave the signal to the sawyer; that Lee got his eye and glanced at him a few seconds; that he accepted his glance as a signal and stooped to pick up the stick

of wood; that Lee, without any notice or warning, pulled the lever and threw the log upon the carriage and against plaintiff's hand; that when he went to work in the mill he was employed by Mr. Smiley, who told him to receive his instructions from Mr. Lee; that he had worked as a dogger before, at one time for 2½ or 3 months; that a short time after the accident Mr. Smiley, who apparently had charge of the mill, said to plaintiff "that Henry Lee, the sawyer, was a man very quick-tempered, careless and would act in a sudden"; that, while in a restaurant in Astoria, Mr. Smiley said "that Henry Lee was all right as a sawyer, but that he hadn't quite caught on to the manner in which to manipulate the nigger, but he hoped to do so in the very near future"; that the log they were preparing to saw was 4½ feet in diameter. On cross-examination plaintiff testified that the lifting up of his right hand indicated to Mr. Lee that there was some obstruction in the way which should be removed, and for him not to touch the nigger. To the question, "So now you swear positively that you looked Mr. Henry Lee right in the eye, and he looked you in the eye, and you gave him the sign not to remove the nigger, or not to push that log on the rollway, that he understood it, and yet he bumped that log up against you?" He answered, "I did." To the question, "That is your contention?" he answered, "It is."

Reversed and Remanded.

For appellant there was a brief over the names of *Mr. I. N. Smith* and *Mr. A. W. Norblad,* with an oral argument by *Mr. Smith.*

For respondent there was a brief over the names of *Messrs. Rauch & Senn* and *Mr. George C. Fulton,* with an oral argument by *Mr. F. S. Senn.*

Mr. Justice Bean delivered the opinion of the court.

It is contended by plaintiff that under the Employers' Liability Act, adopted by the people November 8, 1910 (Laws 1911, p. 16), the defendant is responsible, and that the trial court erred in granting a judgment of nonsuit. The contention of defendant is that there was no testimony to show that Henry Lee, the head sawyer, was careless, negligent or incompetent; that if there was any negligence it was the negligence of a fellow-servant in a matter of the mere operation of machinery; that the case does not come within the provisions of the Employers' Liability Act; that it is governed by the rule announced prior to the passage of this law in the case of *Mast* v. *Kern,* 34 Or. 247 (54 Pac. 950, 75 Am. St. Rep. 580), and other like cases, viz., that the liability of the master depends upon the character of the act in the performance of which the injury arises, and not the grade or rank of the negligent employee. The trial court held that the case at bar did not come within the provisions of the Employers' Liability Act; that the alleged negligence was that of a fellow-servant.

1. Before referring to the statute in question, it will be helpful to note the old rule as to the general nature and obligation of an employer to employ competent and fit fellow-servants, stated in 4 Thompson, Negligence, Section 4048, as follows:

"While, as hereafter seen, the master is not in general liable for an injury happening to one of his servants through the negligence of another of them engaged in the same general employment, yet this rule does not exonerate the master from exercising reasonable or ordinary care in the selection of competent, careful, sober, and fit servants, to the end that other servants shall not be exposed to unnecessary peril by reason of their incompetency, carelessness, drunken-

ness, or other unfitness, and of maintaining such a reasonable supervision over their conduct as will apprise him of the fact of their falling into the habit of drunkenness, carelessness, negligence, etc., while in his service, and of discharging them therefrom on the discovery of such facts. This obligation is analogous to the obligation of the master to furnish safe machinery, appliances, and places of work.''

If the master becomes aware that the servant has become, for any reason, unfit for the service in which he has employed him, so as to endanger the safety of other servants, it will become his duty to discharge the unfit servant; and if, failing in this duty, one of his other servants is injured by the negligence of the unfit servant, the master will be liable.

2. The master is charged with a knowledge of the common reputation in the community of such servant who has been in the employ a long time: 4 Thompson, Neg., § 4050.

3. It is error to take the case from the jury where there is evidence that there was negligence in the selection or retention of the coservant whose act caused the injury: 3 Labatt, Master & Servant, § 1080.

4. The measure of care demanded of the master in such cases is commensurate with the degree of danger reasonably to be apprehended from the instrumentalities employed in performing the labor required: Labatt, Master & Servant, § 186. In *Statts* v. *Twohy Bros. Co.,* 61 Or. 602, at page 608 (123 Pac. 909, at page 911), Mr. Justice MOORE, after referring to the last-mentioned authority, said:

''As a legitimate deduction from the precept last stated, it necessarily follows that, in selecting an employee whose duty it is to direct and control fellow-servants in their performance of work which is essentially dangerous, a master must exercise due or ordinary care in choosing for that purpose a person who

is reasonably safe and competent to execute the service required"—citing *Smith* v. *St. Louis & S. F. R. Co.,* 151 Mo. 391, 408 (52 S. W. 738, 48 L. R. A. 368, 387).

5. Turning, now, to the Employers' Liability 'Act (Laws 1911, p. 16), we note that the title of the act, which is very suggestive, is erroneously printed. The full text as found in the Oregon Electors' Pamphlet for 1910, page 82, is as follows:

"To propose by initiative petition a law providing for the protection and safety of persons engaged in the construction, repairing, alteration, or other work, upon buildings, bridges, viaducts, tanks, stacks, and other structures, or engaged in any work upon or about electrical wires, or conductors or poles, or supports, or other electrical appliances or contrivances carrying a dangerous current of electricity; or about any machinery or in any dangerous occupation, and extending and defining the liability of employers in any or all acts of negligence or for injury or death of their employees, and defining who are the agents of the employer, and declaring what shall not be a defense in actions by employees against employers, and prescribing a penalty for a violation of the law."

The provisions of the act, so far as deemed material in the case at bar, are as follows:

"Section 1. All owners * * engaged in * * the erection or operation of any machinery, * * or use of any dangerous appliance, * * shall see that all metal, * * or other material whatever, shall be carefully selected * * and tested so as to detect any defects, and all scaffolding, staging, * * shall be constructed to bear four times the maximum weight to be sustained by said structure, and such structure shall not at any time be overloaded or overcrowded; * * and all dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of the machinery permits, and all

shafts, wells, * * shall be inclosed, and all machinery other than that operated by hand power shall, whenever necessary for the safety of persons employed in or about the same, or for the safety of the general public, be provided with a system of communication by means of signals, so that at all times there may be prompt and efficient communication between the employee or other persons and the operator of the motive power. * * "

Here follows a regulation for the transmission and use of electricity. Then comes the following provision:

"And generally, all owners, contractors, or subcontractors, and other persons having charge of, or responsible for, any work involving a risk or danger to the employees, or the public, shall use every device, care and precaution, which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Section 2 is as follows: "The manager, superintendent, foreman, or other person in charge or control of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employee."

Section 3 provides for a compliance with the act and for a penalty for a noncompliance.

Section 4 provides that, in case of loss of life by reason of the neglects or failures or violations of the provisions of the act, the heirs of the deceased shall have a right to bring the action without any limit as to the amount of damages.

Section 5 provides that: "In all actions brought to recover from an employer for injuries suffered by

an employee the negligence of a fellow-servant shall not be a defense where the injury was caused or contributed to by any of the following causes, namely: (1) Any defect in the structure, materials, works, plant or machinery of which the employer or his agent could have had knowledge by the exercise of ordinary care; (2) the neglect of any person engaged as superintendent, manager, foreman, or other person in charge or control of the works, plant, machinery or appliances; (3) the incompetence or negligence of any person in charge of, or directing the particular work in which the employee was engaged at the time of the injury or death; (4) the incompetence or negligence of any person to whose orders the employee was bound to conform and did conform and by reason of his having conformed thereto the injury or death resulted; (5) the act of any fellow-servant done in obedience to the rules, instruction, or orders given by the employer or any other person who has authority to direct the doing of said act.''

Section 6 reads thus: ''The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage.''

It will be noticed that the general provisions contained in Section 1 refer to persons having charge of or responsible for any work involving a risk or danger to employees or the public, or what is usually termed ''hazardous occupations.'' The employers' liability law does not define all acts of negligence. As suggested in the title, it defines and extends the liability of employers in certain cases. It makes them responsible for an injury caused or contributed to by the negligence of the superintendent, foreman or person in charge of the machinery, or by the incompetence or negligence of the person in charge of the particular work in which the employee was engaged at the time

of the injury; that is, where the injury was caused by one in authority over the injured servant, and on account of such superiority the employee could not have been expected to exert such an influence over his foreman in the matter of care and caution, as over a co-servant who stood upon an equal footing with him.

It is contended that the case at bar falls within the third provision of Section 5; that is, it is claimed that the injury was caused by the incompetency and negligence of Henry Lee, the head sawyer, who was the person in charge of and directing the particular work in which the plaintiff was engaged at the time of the injury. The act in question is broader in its scope than any other employers' liability law that has been called to our attention. The language employed in the general clause in the latter part of Section 1 of the act is somewhat confused. It, however, provides that all owners, contractors, etc., shall use every care and precaution which it is practicable to use for the protection and safety of life and limb; hence the negligence, if any, of Henry Lee, the head sawyer, whose instructions the plaintiff was told to obey by Mr. Smiley, the secretary and manager of the company by whom plaintiff was employed, would bring the case within the statute, unless the plaintiff assumed the risk incident thereto. By the plain provisions of Section 5, the negligence of a fellow-servant is not a defense, where the injury is caused or contributed to by "the incompetence or negligence of any person in charge of, or directing the particular work in which the employee was engaged at the time of the injury or death": *Dorn* v. *Clarke-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351); *Dunn* v. *Orchard L. & T. Co., ante,* p. 97 (136 Pac. 872).

It is alleged in the complaint that the evidence tended to show that at the time of the injury complained of, the plaintiff was under the direction and

control of Henry Lee and engaged in assisting to
operate machinery used in sawing logs; that in the
operation of the machinery for that purpose a system
of signals had been adopted to be used by the assistant
and the operator of the saw and other appliances;
that the plaintiff gave the required signal not to start
the machinery nor roll the log upon the carriage; that
Lee was looking at him and saw the signal, but dis-
regarded the same and proceeded to work the "nig-
gers" and throw the log upon the carriage and against
plaintiff's hand; that at the same time, the plaintiff,
relying upon Lee's observation and obedience to the
signal, stooped to remove a piece of board from the
saw carriage as he had been instructed to do when-
ever he discovered anything of the kind on the car-
riage. From the nature of the machinery and the
appliances then being operated, it would seem rea-
sonably necessary that a system of communication be
provided, in accordance with the statute, for the safety
of employees, and that such rule be enforced and the
system employed. From the evidence the jury might
have fairly concluded that Lee was careless and negli-
gent in failing to obey the signal given by plaintiff,
and in rolling the log against his hand in the manner
indicated by the testimony. As we understand the
testimony: Henry Lee was the person in charge of
the saw, machinery and "niggers," and was the fore-
man in charge of plaintiff, thus bringing him within
the definition of those whose neglect or incompetence
shall not be a defense, as contained in clauses 2 and 3
of Section 5 above quoted and numbered. Section 2
of the act enacts that the manager, superintendent,
foreman or other person in control of the construction,
or works, or operation, or any part thereof, shall be
held to be the agent of the employer in all suits for
damages for injury suffered by an employee.

68 Or.—33

6. According to the purport of the evidence, at the time of the accident, Henry Lee was in charge and control of the operation of the "niggers" used in rolling the logs, and had charge of that part of the work in which plaintiff was engaged; that is, he was in authority over plaintiff. Lee was therefore a vice-principal and not a fellow-servant within the meaning of the act. A "foreman" is a laborer with power to superintend those working under him: *Peterson* v. *Coal & Mining Co.*, 50 Iowa, 673 (32 Am. Rep. 143). The complaint and evidence describe Lee as a foreman, though that exact word is not used. The evidence tended to show that the injury complained of was the direct result of the carelessness of Henry Lee, the foreman, in failing or refusing to heed the signal given by plaintiff; that such signal had been regularly adopted and was seen and understood by Lee; that the foreman was known to Mr. Smiley, the secretary and manager of the company, to be quick-tempered and careless; and that he had not "caught on" to handling the "nigger" which was alleged to have been carelessly operated. We think under the statute that the evidence should have been submitted to the jury.

In *Lucey* v. *Stack-Gibbs Lbr. Co.*, 23 Idaho, 628 (131 Pac. 897, 900, 46 L. R. A. (N. S.) 86), without applying a statute like ours, it was held that it is a general rule of law that, when a master is engaged in a complex and hazardous business, he must promulgate such rules and regulations for the conduct of his business and the government of his servants in the discharge of their duties as will afford reasonable protection to them, and that it is the duty of the master to use reasonable care to see that such rules are complied with, and that, if he fails to do so, he will be responsible for injuries resulting from failure of compliance. Much to the same effect, see *Potlatch*

*Lumber Co.* v. *Anderson,* 118 C. C. A. 180 (199 Fed. 742) ; *Seewald* v. *Harding Lumber Co.,* 49 Wash. 655 (96 Pac. 221) ; *Harding* v. *Ostrander Ry. & Timber Co.,* 64 Wash. 224 (116 Pac. 635) ; *Elenduck* v. *Crookston Lumber Co.,* 121 Minn. 53 (140 N. W. 125) ; *Cole* v. *Gerrick,* 62 Wash. 226 (113 Pac. 565). In *Schulte* v. *Pac. Paper Co.,* 67 Or. 334 (135 Pac. 527), in considering the Employers' Liability Act, Mr. Justice EAKIN said: ''It also eliminates the defense that the injury was the result of the negligence of a fellow-servant in certain cases, and no doubt by Section 2 it is intended to change the rule that the character of the act in the performance of which the injury arises, and not the rank or class of the negligent employee, is the test whether a negligent employee is a vice-principal or a fellow-servant, as announced in *Mast* v. *Kern,* 34 Or. 247 (54 Pac. 950, 75 Am. St. Rep. 580).'' In *Evans* v. *Portland Ry. L. & P. Co.,* 66 Or. 603 (135 Pac. 206), a case coming within the provisions of the Employers' Liability Act, an instruction to the effect that the legal principle of assumption of risk had been abrogated by the statute was upheld by this court. In *Chicago, I. & L. R. Co.* v. *Hackett,* 228 U. S. 559 (57 L. Ed. 966, 33 Sup. Ct. Rep. 581), the United States Supreme Court upheld a ruling of the Illinois court to the effect that a yard foreman controlling the movements of a train and its engine in the yard, for the purpose of distributing the cars, is in charge of the train within the meaning of Indiana Acts of 1893, page 294, abolishing the fellow-servant rule in actions by railway employees ''when such injury was caused by the negligence of any person in the service of such corporation (the railway company) who has charge of any signal, telegraph office, switchyard, shop, roundhouse, locomotive, engine, or train upon a railway.''

Viewed in the light of the general rule first referred to, and prevailing for years in many of the states, it

will be observed that the statute adopts no untried or unreasonable rule. The language employed in Section 5 of the act presents no ambiguity and admits of no doubt or secondary meaning; therefore it is simply to be obeyed, without more. No room is left for construction: Endlich, Interpretation of Statutes, § 72; Black, Interpretation of Laws, § 35. It is urged by defendant's counsel that Lee, the sawyer, did not have charge of the machinery in the true sense of the word. It appears, however, that he was in authority and had charge and control of the plaintiff who was working with and under him, and we think the evidence tends to show that he had charge of the machinery and appliances within the import of the act. It is suggested by counsel for defendant that the courts of Pennsylvania have construed a law of that state, in substance the same as Section 5 of our statute, adopting the character of the act rule as announced by this court in *Mast* v. *Kern, supra.* From a careful examination of the cases cited from that state it does not appear to us that such is the settled construction. *Remmert* v. *Pennsylvania Ry. Co.,* 18 Pa. Dist. R. 372, is a case where the plaintiff's husband was killed while acting as an engineer on a locomotive, through the negligence and carelessness of another engineer who had disobeyed a regulation of the company. The negligent engineer had no control or authority over the injured employee, thus differing from the facts in the case at bar. The plaintiff invoked the statute with reference to fellow-servants. The District Court held that the statute did not apply. The next case under the Pennsylvania act was that of *Feeney* v. *Abelson,* 49 Pa. Super. Ct. 163, in which the employer was sought to be held liable because one of his teamsters who was a foreman a portion of the time, but not at the time of the injury, had injured another servant through his negligence. The Superior Court reviewed the enact-

ment and held that the statute did not apply. In the other cases cited, the Employers' Liability Act was not commented upon. It has been held that, where a statute copied from the statute books of another state has received a known and settled construction by the courts of that state, that construction at the time of such enactment is to be deemed as forming an integral part of the same: Endlich, Interpretation of Statutes, *371. It is there said:

"But, as applied to transcribed statutes, this rule is undoubtedly subject to important qualifications. Whilst admitting that the construction put upon such statutes by the courts of the state from which they are borrowed is entitled to respectful consideration, and that only strong reasons will warrant a departure from it, its binding force has been wholly denied, and it has been asserted that a statute of the kind in question stands upon the same footing, and is subject to the same rules of interpretation, as any other legislative enactment."

It follows that the judgment of the lower court must be reversed, and the cause remanded, for such further proceedings as may be deemed proper, not inconsistent with this opinion. REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.