(April 12, 1913.)

## PATRICK LUCEY, Respondent, v. STACK–GIBBS LUMBER CO., a Corporation, Appellant.

[131 Pac. 897.]

PERSONAL INJURIES — MASTER AND SERVANT—DANGEROUS PREMISES—
CUSTOM—DUTY TO WARN—DELEGATION OF.

1. Plaintiff was employed by the appellant lumber company and was engaged in constructing a bridge of poles for a turnout, and while so engaged was struck and injured by a tree felled by other employees. No warning was given by the choppers who felled the tree. Plaintiff was not a boss and had no control over the choppers. *Held*, that the negligence of the choppers to give the proper signal was not the neglect and carelessness of a fellow-servant, but was the neglect of a duty devolving upon the employer, for which it was liable.

2. It is a general rule of law that when a master is engaged in a complex and hazardous business, he must promulgate and adopt such rules and regulations for the conduct of the business and the government of his servants as will afford reasonable protection to them, and such duty is a positive obligation imposed upon the master, and he is liable for the negligent performance thereof, whether he undertakes the performance personally or delegates it to another.

3. Where the place in which the servant is required to work is inherently dangerous and signals are required by order of the master or by common custom for the protection of the employees, and are relied upon by the employees as a means of saving themselves from harm, it becomes the absolute duty of the master to give them, and the failure to do so, though the failure be the neglect of an employee, renders the master liable to a servant who is injured in consequence of such neglect.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. W. W. Woods, Judge.

Action to recover for personal injuries caused by the falling of a tree on plaintiff. Judgment for plaintiff. *Affirmed.*

F. T. Post and James A. Wayne, for Appellant.

The rule contended for by the respondent would make the employer an insurer as to the safety of all employees work-

ing in the woods from all accidents from the falling of trees which are being cut down by other employees. To the contrary is the rule as laid down in the text-books and almost unanimously in the decisions of the courts. (2 Labatt, Master and Servant, sec. 601.)

"In the absence of statute, the duty of giving such signals may be regarded as the duty of a fellow-servant, for the neglect to perform which the master will not be liable." (4 Thompson, Commentaries on the Law of Negligence, sec. 4067; *Hermann v. Port Blakely Mill Co.*, 71 Fed. 853; *Martin v. Atchison, Topeka & St. Fe R. R. Co.*, 166 U. S. 399, 17 Sup. Ct. 603, 41 L. ed. 1051; *Martin v. Chicago etc. R. R. Co.*, 65 Fed. 384; *Cooper v. Milwaukee etc. Co.*, 23 Wis. 668; *Dahlke v. Illinois Steel Co.*, 100 Wis. 431, 76 N. W. 362; *O'Neil v. Great Northern Ry. Co.*, 80 Minn. 27, 82 N. W. 1086, 51 L. R. A. 532; *Hussey v. Coger*, 112 N. Y. 614, 8 Am. St. 787, 20 N. E. 556, 3 L. R. A. 559; *Maltbie v. Belden*, 167 N. Y. 307, 60 N. E. 645, 54 L. R. A. 52; *Donovan v. Ferris*, 128 Cal. 48, 79 Am. St. 25, 60 Pac. 519; *Long v. Coronado Co.*, 96 Cal. 269, 31 Pac. 170; *Gallagher v. McMullen*, 25 App. Div. 571, 49 N. Y. Supp. 734; *Portance v. Lehigh Valley C. Co.*, 101 Wis. 574, 70 Am. St. 932, 77 N. W. 875; *New Pittsburgh Coal & Coke Co. v. Peterson*, 136 Ind. 398, 43 Am. St. 327, 35 N. E. 7; *Brynes v. Brooklyn Heights Co.*, 36 App. Div. 355, 55 N. Y. Supp. 269; *Yeaton v. Boston & Lowell R. R.*, 135 Mass. 418; *Texas Ry. Co. v. Campbell* (Tex. Civ. App.), 39 S. W. 1104; *Luebeke v. Chicago etc. Co.*, 63 Wis. 91, 53 Am. Rep. 266, 23 N. W. 136; *Rex v. Pullman's Palace Car Co.*, 2 Marv. (Del.) 337, 43 Atl. 246; *Lundquist v. Duluth St. Ry. Co.*, 65 Minn. 387, 67 N. W. 1006; *MacNally v. Savannah F. & W. Ry. Co.*, 86 Ga. 262, 12 S. E. 351; *Peterson v. Chicago & N. W. Ry. Co.*, 67 Mich. 102, 11 Am. St. 564, 34 N. W. 260; *Donnelly v. San Francisco Bridge Co.*, 117 Cal. 417, 49 Pac. 559; *Graham v. Detroit G. H. M. Ry. Co.*, 151 Mich. 629, 115 N. W. 993, 25 L. R. A., N. S., 326; *McLaine v. Head & Doust Co.*, 71 N. H. 294, 93 Am. St. 522, 52 Atl. 545, 58 L. R. A. 462.)

John P. Gray, Therrett Towles and Frank M. McCarthy, for Respondent.

In carrying on and conducting logging and lumbering operations, large numbers of men are put to work in the woods, felling timber. The safety of those men from injury depends upon the master exercising reasonable care to warn them when trees are about to fall in the vicinity of the places where they are working. Upon the reasonable performance of that duty by the master their safety and security must depend. It is not requiring too much of the master to promulgate and enforce rules for giving warning in the vicinity of the places where the servants are engaged. (*Potlatch Lumber Co. v. Anderson,* 199 Fed. 742; *Cunningham v. Adna Mill Co.* (Wash.), 127 Pac. 850; *Belleville Stone Co. v. Mooney,* 61 N. J. L. 253, 39 Atl. 764, 39 L. R. A. 834; *Ondis' Admx. v. Great Atl. & Pac. Tea Co.,* 82 N. J. L. 511, 81 Atl. 856.)

"Such employees are not to be regarded in law as fellow-servants engaged in a common employment." ·(*Koerner v. St. Louis Car Co.,* 209 Mo. 141, 107 S. W. 481, 17 L. R. A., N. S., 292; *Mihelich v. Mignery,* 155 Mo. App. 325, 136 S. W. 722; *Inland Steel Co. v. Smith* (Ind. App.), 75 N. E. 852; *Gould Steel Co. v. Richards,* 30 Ind. App. 348, 66 N. E. 68; *Curtin v. Clear Lake Lumber Co.,* 47 Wash. 260, 91 Pac. 956; *Kempfert v. Gas Traction Co.* (Minn.), 139 S. W. 145; *Wiggin v. N. W. Paper Co.,* 119 Minn. 273, 137 N. W. 1113.)

SULLIVAN, J.—This action was brought to recover for personal injuries alleged to have been sustained by reason of the carelessness in felling a tree which struck the plaintiff and broke his leg, while he was in the employ of appellant. The cause was tried by the court with a jury and the jury returned a verdict in favor of the plaintiff in the sum of $2,999. Thereupon a motion for judgment was made by the appellant *non obstante veredicto,* which was overruled by the court and a motion for a new trial was also denied. The appeal is from the judgment and said two orders.

The appellant is a corporation engaged in logging and lumbering in the state of Idaho. It is alleged in the complaint

that the respondent was employed at what was known as Camp
No. 1 of the appellant company, as a laborer, blowing out
stumps, and on the 23d of August, 1911, was directed to cease
work at that camp and was transferred to another camp
known as Camp No. 2, and directed by the appellant, together
with another man, to build a bridge across a small stream;
that the superintendence and control of the work of building
said bridge or turnout with other work done by the appellant
was under the direction of a foreman, and that said foreman
was in direct charge of the work of building said bridge; that
it was the duty of plaintiff as a laborer to do such work in
such place and in such manner as the foreman directed; that
the duties of the foreman were to do whatever was necessary
to determine whether the places where the employees were
working were reasonably safe, and to direct the performance of
said work in such a manner as was necessary to keep the same
safe; that on August 25, 1911, the plaintiff was directed to
go to work upon a bridge and to construct same in the manner
directed by the foreman, and while the plaintiff was engaged
in said service, deeply engrossed in his work, the appellant
caused a large tree, about twelve inches in diameter and about
60 feet in length, to be cut and felled, so that the same struck
the plaintiff and injured him; that the tree was cut and felled
by an employee of the appellant working on the hill above
where plaintiff was working; that no notice or warning was
given that the tree was about to be felled or was falling until
it fell and struck plaintiff; that plaintiff was deeply engrossed
in his work, with his back in the direction in which the ap-
pellant was cutting the tree; that the plaintiff was unaware
of the fact that the tree was being cut where the same might
fall on him; that it was the duty of the appellant to give
the plaintiff warning of the falling of a tree in order that he
might seek a place of safety and thus protect himself; that
no warning whatever was given and that no notice was given
the plaintiff that the tree was about to be cut; that the em-
ployee who cut the tree was working under the direction and
control of the foreman; that it was carelessness and negli-
gence on the part of appellant to allow plaintiff to become

engrossed in his work and at the same time direct another man to go on the hillside above him and cut a tree and permit the same to be felled without giving plaintiff any notice or warning, so as to permit him to escape to a place of safety and avoid danger when the tree was felled; that by reason of the injuries so received the plaintiff suffered a double compound fracture of both bones of his right leg between the ankle and the knee, and was severely injured, and from which he was still suffering at the time of the trial.

The appellant answered, denying practically all of the allegations of the complaint that would make appellant liable, and plead affirmatively contributory negligence and negligence of a fellow-servant and assumption of risk.

The evidence in the case was quite brief. The plaintiff testified that he had been working in Camp No. 1 under a boss named Mullen; that on August 23, 1911, Mullen told him to go to Camp No. 2, which was under the charge of a boss named Radigan; that at Camp No. 1 he had been engaged in blowing out stumps and clearing a right of way as a common laborer, at $2.75 per day; that Mullen told him to go up to Camp No. 2 and work there two or three days, as they were short-handed there, and to report to Radigan; that on the morning of August 23d, Radigan and plaintiff walked up the gulch and Radigan told him to work on the skid road; that he told plaintiff to lay poles three feet apart and bury them in the ground, and let about three inches stick over so that a sleigh could slide along on the top; that he kept at that work in the forenoon, and in the afternoon Radigan came along and told him to build a bridge about thirty feet long and twelve feet wide, so that teams could switch out and pass each other; that Radigan told him he would have the timber brought to him; that he was getting $2.75 a day, the same as at Camp No. 1; that Radigan selected the work that he was to do; that Radigan was supposed to go around and tell the men what to do; that he was the only foreman in the camp; that he hired and discharged men and signed their checks; that the timbers for the bridge were felled and carried to the bridge by an Austrian and another man who were work-

ing under the supervision of Radigan, the names of whom plaintiff did not know; that the bridge was being built in a little gulch with a little creek in it and there was a stringer on each side of the creek about thirty feet long; plaintiff and his partner were covering the bridge, plaintiff working on one end chopping a notch and his partner doing the same on the other end, when plaintiff was struck by a falling tree; that the two men who were getting the timber had been felling it up the gulch a ways and bringing the timber down, for a day and a half; that at the time of the injury plaintiff was working on the stringer where Radigan told him to work; that the tree that fell on him came to the right of him; that he did not see any men chopping a tree and did not know that any men were chopping a tree prior to the time it fell; that he had no warning of the falling tree; that the men "never hollered at all"; that prior to the falling of the tree on him, he had never seen the two men cutting a tree near him; that there were men working all around him in the woods, some skidding logs and others chopping; that every man was supposed to holler "Timber!" and give a man a chance to get out of the way when a tree was being felled, and that that had been his experience in the camps of the Stack-Gibbs Lumber Company; that he did not remember of ever hearing the foreman of the camp instruct the men to give that kind of a warning or any kind of a warning; that a man was supposed to holler and give a man a chance to get out of the way; that there were skidding teams climbing the hills all the time; that while he was notching the log on the bridge he did not see the men cutting the tree as they were to the right of him; that he did not know they were in there; that he thought they were up the gulch further; that they had been working up the gulch further; that they had been carrying the logs down on their shoulders to him; that at the time he went to work neither the foreman nor any other person advised him that they were going to cut any timber around close to where he was working; as a result of the tree striking him, his leg was severely broken; he was laid up in bed seven months and it was still swollen at the time of the

trial; that his hospital bill was $350, of which he had paid $80, all the money he had; that prior to the accident he had been in good health; that he was fifty-one years of age; that prior to the time the tree fell there was no warning whatever given him that a tree would fall.

Charley Sanders, an employee of the defendant at the time of the accident, testified that he was working on the skidway something like one hundred feet from where plaintiff was working on the bridge; that there were other men working up there swamping and doing other work, and others chopping timber; that when a tree was about to fall the men were supposed to holler "timber" and give the men a chance to get away; that the practice of giving warning in that way had been followed during all of the time they had been in the camp; that the men were chopping, swamping and cutting about two hundred feet further up than he was; that he saw the tree fall that struck plaintiff; that he did not hear any warning or notice given that the tree was to be felled; that he saw the tree fall and heard someone holler—someone groaning—and went down there with his cant-hook and saw plaintiff and another man lying on the road; that he thought the man who hollered was the man who was hurt with plaintiff; that the tree was about the size of an ordinary telephone pole, about one hundred feet long; that as the tree struck the ground it was broken into pieces; that he then went down to the camp to get help; that he could hear chopping all around him where he was working; that the skidway was up about one hundred feet above where plaintiff was working; that he had seen the two men cutting timbers for the bridge that day; that the men who were cutting the timbers for the bridge and carrying them to plaintiff had been working that day farther up the draw from the camp and beyond where he was working—farther away from plaintiff than he was.

The physician who treated the respondent testified to the injuries and their permanency.

The testimony of the appellant was directed to the establishment of the proposition that the respondent was in charge of the work of constructing the bridge and that those who cut .

the tree that caused the injury were working under his direction. The walking boss of the appellant testified that he had general charge of the camps of the appellant and that there were from forty to sixty men working in each camp; that each camp had a foreman; that he talked with respondent about going to Camp No. 2 to build a scoot road and look after that work. On cross-examination he testified that the foreman Radigan's duties were to show the men where he wanted them to work and tell them what to do; that he was the man who picked out the work, directed the men what to do and how to do it; that the respondent was a common laborer at Camp No. 1 and that he was sent to Camp No. 2 to look after the building of the scoot road and a bridge; that the witness had never told respondent that he had been promoted to be a boss; that he told him what he wanted him to do up there; that he told him to report to Radigan and that Radigan would show him what to do.

Radigan, the foreman at Camp No. 2, testified that respondent came there to go to work, and testified as follows: "Q. What conversation did you have with Mr. Lucey about this work? A. I showed him the work I wanted him to do and showed him what I wanted him to do it with; I also gave him the men I wanted to work with him. Q. What did you tell him he was to do? A. I told him—I first took him and showed him the place in the road to fix, and then took him and showed him a turnout place I wanted built first, I be-lieve, and put him to work at it." He further testified that he told the respondent that the men were to help him and that respondent was to direct them in their work; that at that time there were about fifty-five men working in that camp. Radigan further testified that he had been along there several times that day; that he noticed the men were cutting the timbers for respondent on the hillside above him; that he noticed them several times in different places on both sides of the gulch in the vicinity of one hundred feet; that on the day of the accident they were working about one hundred and fifty feet from respondent. On cross-examination he testified as follows: "Q. I will ask you how you happened to know

where these men were cutting timber around Lucey. A. It was my business to know where they were; every time I went through the woods I would also find out where they were. Q. They were working under you? A. Yes, sir. Q. It was your business to see that they were attending to their work? A. Yes, sir." Radigan also testified that he was the foreman; that the skidding crew did not have a boss; that there was one other boss in that camp, namely, the respondent; that he did not notify the respondent that he had been promoted to be a boss; that he did not know whether respondent knew. he was a boss or not.

It clearly appears that Radigan took the respondent up there and told him what he wanted him to do and how he wanted it done, and that he told the other men what he wanted them to do, and did not inform respondent that he had been made a boss or that he had charge of any men.

In rebuttal respondent testified that a man by the name of Mullen was the man who sent him up there to construct the bridge; that the witness Garvison never spoke to him about it and no one ever told him that he was to have charge of anything or of any men.

The jury rendered a verdict in favor of the respondent for the sum of $2,999.

Four errors are assigned as the basis for the reversal of the judgment: 1st, that the trial court erred in denying appellant's motion for a nonsuit; 2d, that the court erred in denying appellant's motion for a directed verdict; 3d, that the court erred in denying appellant's motion for a judgment *non obstante veredicto;* 4th, that the court erred in denying appellant's motion for a new trial.

It is first contended that the respondent was an experienced woodsman, and had had many years' experience in logging camps, and he testified that it was the custom or rule in the camps of the appellant company to give notice or warning to the men when a tree was about to fall, and that since it was the custom or rule of the appellant company that the men felling trees, before the tree falls, must "holler" or cry out the word "timber," in order to give the men a chance to get

out of the way, that if the servant neglects to give the signal or warning on felling a tree, such neglect is the fault of a fellow-servant and the employer is not liable for any damage resulting therefrom.

The question, then, is directly presented, whether those who felled the tree were fellow-servants of the respondent, and whether their neglect to give the signal or warning required to be given on the falling of a tree was the neglect or carelessness of a fellow-servant for which the employer was not liable.

We think the general rule of law is that when a master is engaged in a complex or hazardous business, he must promulgate and adopt such rules and regulations for the conduct of his business and the government of his servants in the discharge of their duties as will afford reasonable protection to them, and that it is the duty of the master to use reasonable care to see that the rules adopted by him for the safety of his servants are complied with, and if he fails to do so, he will be responsible for injuries resulting from failure of compliance.

In *Potlatch Lumber Co. v. Anderson,* 199 Fed. 742, which is a case quite similar to the one under consideration, after stating the duties of the corporation substantially as above set forth, the court said:

"Nor was it disputed that the duties just specified are positive obligations imposed upon the master by law, and that he is liable for the negligent performance of such duties, whether he undertakes their performance personally, or delegates them to another."

The court also held that it would be unreasonable to expect a man in a crew of "swampers" to do his work of cutting down brush and at the same time protect himself against the danger of trees falling on him cut by men in another crew near by, unless the men cutting the trees, or some one knowing the danger, would give him warning.

The fact that the appellant company had adopted rules in regard to giving warning would indicate that there was a necessity for such rules and their enforcement. The respond-

ent was employed to construct a certain bridge or turnout. The appellant undertook to furnish him the poles or timber for that purpose, and the evidence shows that he had no supervision or control over those who felled the timber and delivered it to him for use in constructing the bridge.

In *Cunningham v. Adna Mill Co.* (Wash.), 127 Pac. 850, the court held that fallers in a logging camp are not fellow-servants of the members of a crew engaged in hauling logs from the woods, where they are left by the fallers; and that the employer failing to have proper warning given before fallers of trees cause them to fall across the haul-back line, where plaintiff, a member of the hauling crew, is exposed to unexpected danger, is guilty of actionable negligence.

In that case the negligence upon which the action was predicated was the failure to give a signal or warning to the person injured that a tree was about to fall. In the course of that decision the court said:

"The evidence shows that respondent and the fallers were working in separate places, at a different character of employment, and that they were not in view of each other. This being true, the failure of the master to see that a proper warning or signal was given before the fallers, whom respondent could not see, caused a large tree to fall across the haul-back line, constituted negligence, as it necessarily exposed respondent to a sudden and unexpected danger. Under such circumstances, it was the nondelegable duty of the master to see that a signal or warning was given."

As touching upon the question here involved, see *Belleville Stone Co. v. Mooney*, 61 N. J. L. 253, 39 Atl. 764, 39 L. R. A. 834, which is a well-considered case. In the course of the decision the court said:

"We conclude, therefore, that it was part of the defendant's duty to the plaintiff that proper care should be exercised in giving warning of an expected blast. In selecting the person who was to fire the blast as the person to give the warning, the defendant probably chose the man best able to perform that duty; but, as the defendant's responsibility extended beyond the selection of an agent, and included the warning

itself, it must answer for negligence in the giving of warning, no matter how fit was the chosen agent.''

Substantially the same doctrine is laid down in *Ondis' Admx. v. Great A. & P. Tea Co.*, 82 N. J. L. 511, 81 Atl. 856. That was a case in which there was neglect in giving a warning, and it was held that neglect to give the warning was legally imputed to the employer, as the servants he required to give the warning were not to be regarded in law as fellow-servants engaged in a common employment.

This doctrine is also recognized in *Koerner v. St. Louis Car Co.*, 209 Mo. 141, 107 S. W. 481, 17 L. R. A., N. S., 292. In that case it was the foreman's duty to give the warning, but, as we view it, that would make no difference, as the faller of the tree and respondent were not fellow-servants in regard to the duty of giving the warning or signal. (See, also, *Kempfert v. Gas Traction Co.* (Minn.), 139 N. W. 145.)

In a very recent decision from Minnesota, *Elenduck v. Crookston Lumber Co.* (Minn.), 140 N. W. 125, the court recognized that where signals are employed in the general work of the master and are used solely in directing the movement of machinery or instrumentalities connected with the employment, the signals are mere details of the work, and the failure on the part of servants to give them does not charge the master with liability, and held as follows:

''But where the place of work is inherently dangerous, and signals are required by orders of the master or, by common custom, for the protection of the employees, and to provide and to maintain for them the safety of their place of work, and are relied upon by the employees as a means of saving themselves from harm, it becomes the absolute duty of the master to give them, and a failure to do so, though the failure be the neglect of a servant engaged in the common employment, renders the master liable to a servant who is injured in consequence of the neglect. This principle of the law of master and servant is thoroughly settled in this state.''

And further on in the opinion, the court, commenting on the case of *Anderson v. Coal Co.*, 108 Minn. 455, 122 N. W. 794, 26 L. R. A., N. S., 624, said:

"Counsel's criticisms of the decision in that case are not sound. They apparently overlook the essential element made the foundation of that decision, namely, the dangerous character of the work, and the necessity of signals for the protection of employees."

In *Anderson v. Coal Co., supra,* the court said:

"The rules of law as to how far the master may delegate his duty to his servant appear in a measure to have been rather rendered uncertain than to have been definitely determined by the mass of decisions on this subject. The opinion has been frequently expressed as in *Brabbits v. Chicago & N. W. R. Co.* (1875), 38 Wis. 289–299: 'It would be monstrous to allow . . . . [the master] to relieve . . . . [himself] from all liability for a breach of that duty [to the servant] by simply charging one of . . . . [his] inferior officers or servants with its performance.' This principle has been reiterated times without number by the Wisconsin court and by almost every court in the country. . . . .

"In point of fact, the view these and allied authorities have taken is in large measure a necessary product of the transition in judicial opinion as to what is the criterion by which it shall be determined who is and who is not a fellow-servant. The decisions of courts of other states, that, under given circumstances, one servant is a fellow-servant of another, are not controlling on this court, unless the criterion by which the relationship is determined is the same as in this jurisdiction, namely, that a fellow-servant is one to whom the master has not intrusted the performance of some absolutely nonassignable duty of the master. The federal courts, having originally announced the test of superior servant, or the doctrine of control, then rejected it, and adopted the separate department theory. It has been quite generally thought that this theory has been in turn largely abandoned and the current test of a vice-principle adopted. But in *Peters v. George,* 154 Fed. 634, 83 C. C. A. 408, Judge Gray said that 'under the modern rule of the federal courts, the theory of vice-principal as determining the liability of a master . . . . has been largely discarded, and the distinction . . . . to be con-

sidered as merely and solely the negligence of a fellow-servant turns rather on the character of the act than on the relation of the employees to each other.''

In *Bartonshill Coal Co. v. Reid,* 3 Marcq. H. L. Cas. 266, 283, Lord Cranworth said:

The master is ''bound to guarantee third persons against all hurt arising from the carelessness of himself or of those acting under his orders in the course of his business.'' More specifically, ''no duty required of . . . . [the master] for the safety and protection of his servants can be transferred so as to exonerate him from such liability.''

If the rule were that an employer can avoid all liability simply by delegating the authority to a servant to give warning of a falling tree, it would be a very easy rule for the employer to follow to avoid liability, should the servant fail to give the warning and another servant be injured thereby.

It is the duty of the master to furnish a reasonably safe place for the servant to work, and if it requires warning and signals to protect a servant from injury from falling trees cut by other servants, it is the master's duty to see to it that the proper signals are given, and if the injury is caused by the failure to give the signals, the master is liable. His liability or responsibility extends beyond the selection of a servant or agent to give the signal, and includes the signal itself, and if the servant neglects to give it, the master must answer for such negligence, as the authority to a servant to give a signal is nondelegable and the failure to give it is imputed to the master, and the servant employed to give it is not the fellow-servant of the injured employee so far as the giving or failure to give the signal is concerned. The master cannot instruct a servant to do or perform a nonassignable or nondelegable duty and escape liability if the servant neglects to perform such duty, in case injury results to the employee.

We think, under the evidence in this case and the law applicable thereto, the appellant was liable for the injuries to the respondent. We therefore conclude that the court did not err in denying appellant's motion for a nonsuit, its motion

for a directed verdict, its application for a judgment *non obstante veredicto,* nor in denying its motion for a new trial. The judgment is therefore affirmed, with costs in favor of the respondent.

Ailshie, C. J., and Stewart, J., concur.