## 12383

### GRIER v. WINYAH LUMBER COMPANY

#### (142 S. E., 685)

1. MASTER AND SERVANT—LUMBER COMPANY HELD NOT NEGLIGENT FOR FAILING TO FURNISH RAIL SPLITTER REASONABLY SAFE PLACE TO WORK WHERE RISK WAS OBVIOUS.—In action against lumber company for injury to employee from falling of tree while he was splitting log into rails, defendant *held* as matter of law not negligent for failing to furnish reasonably safe place to work, since risk was obvious, and could not fail to be comprehended by person of meager understanding.

2. MASTER AND SERVANT—EXISTENCE OF DANGER ARISING DURING PROGRESS OF WORK CANNOT BE IMPUTED TO MASTER'S NEGLIGENCE, UNLESS ARISING THROUGH NEGLIGENCE OF ONE PERFORMING NONDELEGABLE DUTIES.—Unless danger arising during progress of work arises through negligence of some one performing nondelegable duties of master to servant, its existence cannot be imputed to negligence of master.

3. MASTER AND SERVANT—EVIDENCE HELD TO SHOW THAT NEGLIGENCE, IF ANY, IN SAWING TREE WHICH FELL ON PLAINTIFF, WAS THAT OF FELLOW SERVANTS.—In action against lumber company for injury to plaintiff, who was engaged in splitting log into rails, from falling of tree, evidence *held* to show as matter of law that negligence, if any, in sawing tree, which fell, was that of fellow servants, which plaintiff assumed in taking employment.

4. MASTER AND SERVANT—LUMBER COMPANY NEED NOT WARN RAIL SPLITTER OF DANGER FROM FALLING TREE, WHERE DANGER WAS PLAIN AND HE WAS EXPERIENCED WORKMAN.—In action against lumber company for injury to plaintiff, engaged in splitting log into rails, from falling tree, defendant *held* not under legal duty to give plaintiff warning of danger, where danger was plain, open, and obvious, and plaintiff was experienced workman 24 years old.

Before DEVORE, J., Georgetown, November, 1926. Reversed and remanded with instructions.

Action by Samuel B. Grier against the Winyah Lumber Company. Judgment for plaintiff, and defendant appeals.

*Mr. Walter Hazard,* for appellant, cites: *Error to overrule motion for nonsuit here:* 55 S. C., 483; 29 S. C., 96. *Master not liable to servant for injury caused by negligence*

*of co-servant without knowledge of master:* 54 L. R. A., 108; 71 Fed., 853; 92 Fed., 884; 22 N. Y. S., 749; 32 Mich., 510; 123 S. C., 199; 18 R. C. L., 736; 93 A. S. R., 522; 33 L. R. A. (N. S.), 223. *When only one inference can be drawn from a given state of facts, as to whether there was negligence or not, it is a question for the Court:* 51 S. C., 296; 52 S. C., 438; 55 S. C., 483. *General liability of master:* 21 S. C., 466; 27 S. C., 71; 35 S. C., 381; 14 Enc. Law, 842, 843; 54 L. R. A., 85; 64 S. C., 212; 40 S. C., 104; 48 S. C., 190; 72 S. C., 237; 21 S. C., 547; 72 S. C., 346; 55 S. C., 101; Id., 483; 72 S. C., 264; 1 LaBatt, Master and Servant, Secs. 263, 264, 279; 72 S. C., 346; 86 S. C., 271; 211 U. S., 459; 199 Pac., 933; 269 A. L. R., 864; 18 R. C. L., 569, Sec. 78; 170 U. S., 671; 66 S. C., 482; 71 S. C., 53; 18 S. C., 262; 22 S. C., 557; 23 S. C., 526; 39 S. C., 510; 51 S. C., 96; 123 S. C., 199; 130 S. C., 458; 111 S. C., 368; 2 L. R. A. (N. S.), 840. *Party alleging fraud must prove it by clear and convincing evidence:* 91 S. E., 166; 107 S. E., 795; 119 S. E., 1020; 120 S. E., 891; 55 S. E., 1020. *Proof of fraud:* 2 Pom., Eq. Jur., Secs. 876–879, 882, 886, 888, 890; 9 Cyc., 411, 424, 426; 5 L. R. A. (N. S.), 669. *A mere representation of opinion, although erroneous, is not a fraud against which the law will relieve:* 9 Cyc., 416; 5 L. R. A. (N. S.), 669; 116 Fed., 913; 2 Pom., Eq. Jur., Sec. 879; 66 L. R. A., 734; 52 N. W., 135; 66 Pac., 1018; 16 So., 346. *Physician furnished by employer for injured employee, where employer is not under contract, is not the agent of the employer:* 128 S. C., 216. *Cases distinguished:* 106 S. C., 200; 110 S. C., 534.

*Mr. Philip H. Stoll,* for respondent, cites: *"Fellow-servant":* 57 S. C., 79; 51 S. C., 79; 94 S. C., 388; 89 S. C., 506; 71 S. C., 653; 95 S. C., 38. *Where but for negligence of master injury would not have occurred, even act of God will not permit master to disclaim liability:* 105 S. C., 226. *Safe place to work:* 130 S. E., 476; 112 S. C.,

177; 117 S. C., 122; 118 S. C., 238; 101 S. C., 73; 47 S. E., 432; 76 S. E., 976; 119 S. E., 828. *Nonsuit:* 81 S. C., 456; 85 S. C., 355; 61 S. C., 486; 65 S. C., 440. *Directed verdict:* 108 S. E., 363. *Assumption of risk:* 87 S. C., 213; 130 S. C., 476; 97 S. C., 411; 117 S. C., 124; 118 S. C., 238; 113 S. E., 300; 112 S. C., 541; 109 S. C., 543; 102 S. C., 276; 101 S. C., 73; 102 S. C., 509. *Concurrent negligence of master and fellow-servant:* 36 Cyc., 1302; 26 Cyc., 1321; 112 S. C., 177. *Act of God:* 29 S. C., 96; 91 S. C., 64; 105 S. C., 226. *Payment and release:* 56 S. C., 508; 105 S. E., 439. *Negligence:* 118 S. C., 234. *Questions for jury:* 116 S. C., 305; 113 S. C., 137; 51 S. C., 70; 109 S. C., 343.

February 24, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for the recovery of damages for personal injury alleged to have been sustained by the plaintiff, while in the employ of the defendant, on April 2, 1925, from the falling of a tree upon him while he was engaged in splitting a log into rails or "puncheons," to be used in repairing a wagon road for the transportation of timber in the logging operations of his employer in Georgetown County.

The complaint set out two causes of action. The first was based upon the alleged negligence of the defendant in failing to furnish the plaintiff a safe place to work, in that it was at the time engaged in cutting down a tree in close proximity to the place where he was put to work, and in failing to give him warning of the danger to which he was exposed; the second was based upon the alleged negligence of the defendant in failing to select a competent physician to treat the plaintiff for his injuries. The complaint also alleged that a release given by the plaintiff to the defendant was

procured by means of false and fraudulent representations, and prayed that it be set aside.

As to the first cause of action, the defendant by its answer set up a general denial and interposed the defenses of assumption of risk, the negligence of plaintiff's fellow servants, and that the injuries sustained by the plaintiff, if any, were the result of an act of God, beyond the control of the defendant, and pleaded a release executed by the plaintiff. As to the second cause of action, the defendant denied liability and pleaded the contributory negligence of the plaintiff. The defendant also interposed a demurrer to both causes of action, which demurrer was overruled by the presiding Judge. An appeal was taken from this ruling, but was abandoned; so that the demurrer passes out of the case.

During the trial of the case, at the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, and at the close of all the testimony a motion for a directed verdict, both of which were refused by the presiding Judge. The jury returned a verdict for the plaintiff in the sum of $3,500.00 on the first cause of action, and found for the defendant on the second cause of action. Judgment for the plaintiff was duly entered for the amount of his verdict, and an appeal was taken therefrom by the defendant. No appeal was taken from the judgment in the second cause of action.

The exceptions raise a number of questions, but in the view that we take of the case it will be necessary to consider only those imputing error to the trial Judge in refusing the motion for a directed verdict on the grounds (1) that there was no evidence showing negligence on the part of the defendant in failing to furnish the plaintiff a reasonably safe place to work; (2) that the testimony admits of but one reasonable inference, namely, that if the falling of the tree upon the plaintiff was the result of any negligence in the cutting of the tree, such negligence was the negligence

of the plaintiff's fellow servants, and the defendant is not liable for any injuries suffered therefrom by the plaintiff; and (3) that the testimony admits of but one reasonable inference, namely, that the defendant was under no legal duty to give the plaintiff warning of the danger.

The testimony shows that on the 2d day of April, 1925, the plaintiff was working for the defendant, had been then working for it about six or seven months, and had worked for it in all three or four years; that on that day one C. H. Sawyer, a "boss" of the company, set the plaintiff and several others to work to saw down trees, saw them into logs, split the logs into puncheons, and repair a road for the use of the company's log carts; that two of the laborers, Warley Avant and Wilson Goude, sawed down the trees and sawed them into logs; that two other laborers, the plaintiff and Durwood Haselden, split the logs into puncheons, and that other laborers carried the puncheons to the road, about 150 feet away, and put them in place; that after the work had progressed for a time, and while the plaintiff and Haselden were engaged in splitting one of the logs into puncheons, Warley Avant and Goude were sawing down another tree about 50 feet away from them, the plaintiff having his back turned toward this tree; that, when the tree which was being sawed down began to fall, Goude and Avant called out a warning to the plaintiff and Haselden; that they ran, but that the tree fell on the plaintiff, about 20 feet from where he had been splitting the log, and injured him. The "boss" went away after the work had begun, and was not present at the time of the accident; he did not select any particular tree, and direct that it be sawed down, nor any particular log, and direct that it be split up, nor did he indicate the exact spot where laborers should do their work, but merely directed them to saw and split up trees in that locality, and left the details to their discretion. The plaintiff, a young man about 24 years of age, testified that he had been engaged in cutting trees, cutting up logs and the like "off and

on" for about six or seven years; that he heard Sawyer tell Avant and Goude to saw down trees, and saw them sawing; that he could have seen the tree that fell on him, if he had turned and looked, as there was no thick growth or other trees to hide it; and that on other occasions he had been engaged in cutting up logs in the woods, while other laborers were sawing down trees near him.

I. Was there any evidence showing negligence on 1-3 the part of the defendant in failing to furnish the plaintiff a reasonably safe place to work? We think not. As said in *Brabham v. Telegraph Co.,* 71 S. C., 53; 50 S. E., 716, "the place and character of such work [felling and removing trees] necessarily involved some danger as an incident of that kind of employment." The plaintiff had had several years' experience in logging, and must have known of the exisence of such danger, which was open and obvious, and could as readily have been known and appreciated by him as by the defendant. As in *Wofford v. Cotton Mills,* 72 S. C., 346; 51 S. E., 918, there was no "evidence of disability or lack of experience or ordinary intelligence. The risk was obvious, and could not fail to be comprehended by a person of meager, not to say ordinary, understanding."

The nature of the work and the circumstances of the employment being taken into consideration, the place of work was safe enough in the first instance. Whatever danger there was arose during the progress of the work, but unless it arose through the negligence of some one performing nondelegable duties of the master to the plaintiff—"in charge for the master," as said in *Leopard v. Beaver Duck Mills,* 117 S. C., 122, 108 S. E., 190—its existence cannot be imputed to negligence of the master. The evidence admits of no other inference than that Avant, Goude, the plaintiff, and Haselden were engaged in a common undertaking, and that, in sawing the tree which fell on the plaintiff, Avant and Goude were engaged in the performance of

the ordinary duties of their employment, and not in the performance of any duty owing by the master to the plaintiff, and were, therefore, fellow servants of the plaintiff. There is no contention that they were not selected with due care, or were not competent. Under these conditions, the defendant would not be liable for the injury to the plaintiff, even if it be conceded that Avant and Goude were negligent in sawing down the tree which fell upon him. In *Brabham v. Telegraph Co., supra,* this Court said:

"When one takes employment under another, he assumes the natural and ordinary risks of such employment, which includes the negligence of a fellow servant whom the employer has selected with due care. In determining who are fellow servants, the test or rule in this State is not whether the servants are of different grade, rank, or authority, one of them having power to control and direct the services of another; but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had intrusted to the offending servant."

II. Was the defendant under any legal duty to give the plaintiff warning of the danger? In *Owings v. Moneynick Oil Mill,* 55 S. C., 483, 33 S. E., 511, this Court said:

"The well-settled rule, as we understand it, is that it is the duty of the master, when a servant is set to work at a dangerous place, or with dangerous machinery or other appliances, to warn the servant of the danger to which he is exposed, where he knows or ought to know that the servant is not aware of the danger, and it is negligence on the part of the master to fail to give such warning in such a case. But where the servant knows the dangerous nature of the situation in which he is required to work, or of the machinery or other appliances which he is to use, such warning would not only be useless, but would be absurd. * * *

These principles are so well founded in reason and common sense that they need no authority to support them; but, if authority be needed, it may be found in any work or in any case which treats of the subject."

In *Biggers v. Catawba Power Co.,* 72 S. C., 264, 51 S. E., 882, this Court said:

"But if the danger is latent or unusual, or the servant is youthful, or the master knows he is inexperienced, it is his duty to give warning of the danger."

In the present case the danger was not latent or hidden or unusual, but was plain, open, and obvious, and the plaintiff knew or should have known of its existence. The plaintiff was not so youthful as to be unable to form and act upon his own intelligent judgment; nor was he inexperienced, as his own testimony shows that he had been engaged in logging for the defendant for several years. We think this is a case in which there was no duty upon the defendant to warn the plaintiff of his danger.

We have reached the conclusions herein stated after a very careful study of the facts of this case, in the light of the law applicable thereto; but we are not to be understood as holding that under no circumstances would it be the duty of the master to give the servant warning of the falling of a tree. On the contrary, a case might readily arise in which it would be the duty of the master to give such warning. We are impressed by the reasoning of the Idaho Supreme Court in the case of *Lucey v. Lumber Co.,* 23 Idaho, 628, 131 P., 897, 46 L. R. A. (N. S.), 86, in which it was held that the failure to warn the servant injured by the falling tree constituted negligence on the part of the master; but the facts in that case differ in essential respects from the facts of the present case.

It is the judgment of this Court that the exceptions raising the points herein discussed be sustained, the judgment of the lower Court reversed, and the case remanded to that

Court, with instructions that judgment be entered up for the defendant under Rule 27 of this Court.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE, and CARTER concur.