IRA FARR v. TALLASSEE POWER COMPANY.

(Filed 22 January, 1930.)

1. **Master and Servant C b—In this case held: evidence of master's negligence was sufficient to be submitted to the jury.**

Where, in an action by an employee against his employer to recover damages for a negligent injury, the evidence tends to show that the employee was required to hook huge rocks by a cable so that they might be hoisted by a powerful derrick, and that the master, in the exercise of his nondelegable duty to provide a reasonably safe place to work, had placed a watchman on a hill to transmit signals from the employee to the engineer operating the derrick, the employee and the operator of the derrick not being in sight of each other, and that the watchman negligently signalled the operator of the derrick without first receiving his signal from the employee, and that the operator of the derrick started hoisting the rock hooked by the employee before the employee could get safely out of the way, and that he was injured while attempting to run clear of the danger: *Held*, the evidence was sufficient to have been submitted to the jury and to overrule defendant's motion as of nonsuit. C. S., 567.

2. **Master and Servant C e—In this case held: the employer could not escape liability on ground that the injury was caused by a fellow-servant.**

Where an employer, in the exercise of his nondelegable duty to provide his employee a reasonably safe place to work, places a watchman where he can see both the employees hooking huge rocks by cable to be lifted by a derrick and the operator of the derrick, the operator of the derrick and the employee hooking the rocks not being in sight of each other, the duty of the watchman being to signal the operator of the derrick when the employee was ready for the derrick to hoist a rock he had hooked: *Held*, upon an injury being inflicted upon the employee by reason of the watchman signalling the operator of the derrick before the employee had signalled him that he was ready, the employer may not escape liability on the ground that the watchman was a fellow-servant, and an instruction that under these circumstances the watchman would be a vice-principal is proper.

3. **Master and Servant C g—In this case held: act of employee in attempting to avoid imminent peril caused by master's negligence was not contributory negligence barring recovery.**

Where an employee engaged in hooking rock with a cable to be hoisted by a derrick is suddenly placed in imminent peril by reason of the employer's vice-principal negligently signalling the engineer operating the derrick to hoist the rock before the employee could get clear of the rock being hoisted: *Held*, the employee's act in running from the danger over slippery rocks, resulting in a fall causing the injury in suit, will not be held as a matter of law to be contributory negligence barring his recovery, and the submission of the question to the jury upon the appropriate issue is proper.

FARR *v.* POWER COMPANY.

APPEAL by defendant from *McElroy, J.,* and a jury, at June Term, 1929, of GRAHAM. No error.

This is an action for actionable negligence instituted by plaintiff against defendant for injuries sustained.

The defendant is a corporation operating a plant that generates hydro-electric power at Tapoco, N. C. The plaintiff was employed by defendant as a carpenter and pipe-fitter, but in October, 1926, was ordered and directed to assist in removing some large rocks and boulders out of the river near the mouth of the tail race, which was blocking the flow of the water from the water turbine wheels and interfering with the proper operation of them.

The allegations of negligence are:

"(a) The defendant failed to furnish the plaintiff a proper and safe place with proper and safe surroundings and conditions in which to perform the work assigned him to do.

(b) In that the defendant negligently failed to furnish and use proper means, equipment and methods for doing the work in which the plaintiff was ordered and directed to do.

(c) In that the defendant negligently failed to use experienced and competent servants and employees in sufficient number and positions for doing the work properly and safely, in which the plaintiff was assigned and directed to do and in which he was injured.

(d) In that the defendant negligently assigned the plaintiff to work out in the river in a dangerous and unsafe place in connection with high-powered derricks and appliances when in operation and without a proper and safe way or means by which to approach and leave the said derrick cable and its appliances in safety.

(e) In that the defendant wrongfully and negligently started, caused and permitted to be in operation the said powerful derrick and cable at a time when the plaintiff was busily engaged in handling and hooking the end of the cable to a large rock or boulder out in the river in a dangerous and unsafe place, without any notice or warning to the plaintiff.

(f) In that the defendant negligently started its said machine and cable while plaintiff was busily engaged in performing his duty at and in connection therewith to the great danger and distress of plaintiff and caused plaintiff in said emergency to attempt to flee for his safety, throwing him across a rock, rupturing, bruising and permanently injuring his body, causing him to suffer great pain and mental anguish to his great damage."

The defendant denied negligence and set up the defense of contributory negligence, assumption of risk and the fellow-servant doctrine.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint?  Answer: Yes.

2. Did the plaintiff contribute to his injury by his own negligence? Answer: No.

3. Did the plaintiff assume the risk of his injury?  Answer: No.

4. What damage, if any, is the plaintiff entitled to recover?  Answer: $2,000."

The necessary facts will be set forth in the opinion.  The defendant made numerous assignments of error and appealed to the Supreme Court.

*T. M. Jenkins, Moody & Moody and Edwards & Leatherwood for plaintiff.*

*S. W. Black and R. L. Phillips for defendant.*

CLARKSON, J.  At the close of the plaintiff's evidence and at the close of all the evidence, defendant moved for judgment as in case of nonsuit.  C. S., 567.  The court below overruled the motions and in this we find no error.

Plaintiff's evidence was to the effect that he was employed by the superintendent in charge of defendant's hydro-electric power plant to assist in removing large rocks out of the river, near the mouth of the tail race.  In doing this a derrick and cable were used to lift the rock. A cable was stretched from one side of the mountain to the other, running across the river at the end of the tail race.  The engineer in charge of the hoisting engine, W. D. Williams, was not in sight of the man at the tail race, where they hooked or hitched the rock to the cable.  The superintendent, Walter Scott, had placed a man, one White, on the side of the mountain who could see the engineer and the workmen at the tail race, and whose duty it was when the rock was hooked at the tail race and the signal given to him to signal the engineer, who would start the engine, and the rock would be hoisted and carried out.  When the men hooked on the rock they had to get out of the way.  Plaintiff and the men were hitching on the stone 4 x 5 x 7 feet.  "We got this rope around this rock and the derrick started, and I did not have time to get across this rough place without rushing for my life, for the only way to get out was the way this cable was coming.  Before I could get out the derrick moved and I made a spring to get away from it.  I was in the river, over on this side near the power house was water, say 30 or 35 feet, and just back of this rock it seemed to be 4 feet before you could land on another stone, and that water was deep.  The only way I could do was to come out the way the cable come, and a little bar of sand

there, and then I got to get out on, and when I stepped on this stone going out from this cable wire was when I got my injury. I was traveling fast because of the danger of this rock, starting before I was ready and could get away. I stepped on a, small boulder; it was slick; my left foot slipped from under me and threw me in a twist, and I felt myself tearing in my left side, and of course I felt myself tearing in my left side, and of course I was very bad hurt. If I was doing the hooking on the rock, I was the man to signal Mr. White. I was doing the hooking at the present time, and Mr. White was signalling Mr. Williams to start. Williams was not in sight of me, but I was in sight of White. I did not signal Mr. White to have the engine started. It started without a signal. When I fell White stopped the derrick until I got up out of the way. He flagged him and stopped him. . . . Mr. Walter Scott was in charge of the crew. Mr. Scott was not there, and I suppose they considered that I was in charge. I did not feel that they were altogether under my charge, because he gave me orders and did not say anything to me about it. I had no right to fire or hire them. I could only give them orders that he gave me. . . . Q. Did you tell any one that you wanted another way to get out of there? A. I wanted timbers so we could prepare a gangway, but Scott said there was not any timbers there—no 2 by 4's. Q. Did you look for timber? A. Not any but 6-inch stuff. This was short stuff, and it would take longer boards to get out in safety."

The court below charged the jury: "The court charges you that the defendant contends that White was a fellow-servant of the plaintiff, and if he gave a signal to have the engine started when he had received no such order from the plaintiff, then the defendant contends that the plaintiff was injured by the negligence of White, and that White was his fellow-servant. (The court charges you, however, that if the plaintiff has satisfied you by the greater weight of the evidence that White was stationed at the place designated by Scott, or under Scott's direction, with instructions to receive orders from the plaintiff and transmit them to the engineer to start the machinery, and if the plaintiff has further satisfied you by the greater weight of the evidence that the starting of the machinery and the moving of the cables and stones without orders from the plaintiff rendered the place at which he was required to work much more dangerous, then the court charges you that White could not be a fellow-servant of the plaintiff, but he would be a vice-principal, and the company would be responsible for his acts.)"

The assignment of error is to the part of the charge in parenthesis, and we think this the only material one to be considered on the record.

We think the evidence justified the charge as given. A similar case to the present one is *Cook v. Mfg. Co.*, 182 N. C., 205. There was a

petition in the case to rehear—183 N. C., 48, and at p. 51 we find: "The rigorous rule of the fellow-servant doctrine, as it once obtained, has been greatly modified in recent years. Speaking to this question, *Brown, J.*, in *Tanner v. Lumber Co.*, 140 N. C., 475, makes the following pertinent observation: 'The true rule now is more humane and holds the master liable for negligence in respect to such acts and duties as he is required, or assumed to perform, without regard to the rank or title of the agent entrusted with their performance. As to such acts, the agent occupies the place of the master, and he is liable for the manner in which they are performed. *Flake v. R. R.*, 53 N. Y., 549; *Crispin v. Bobbilt*, 81 N. Y., 521. If the negligent act of one servant is done in the discharge of some positive duty which the master owed to another servant, then negligence in the act upon the part of the servant is the negligence of the master.' "

In *Lucey v. Stack-Gibbs Lumber Co.*, 23 Idaho, 628, 46 L. R. A. (1903), p. 92, *Sullivan, J.*, said: "If it requires warning and signals to protect a servant from injury from falling trees cut by other servants, it is the master's duty to see to it that the proper signals are given, and, if the injury is caused by the failure to give the signals, the master is liable. His ability or responsibility extends beyond the selection of a servant or agent to give the signals, and includes the signal itself, and, if the servant neglects to give it, the master must answer for such negligence, as the authority to a servant to give a signal is nondelegable, and the failure to give it is imputed to the master, and the servant employed to give it is not the fellow-servant of the injured employee so far as the giving or failure to give the signal is concerned. The master cannot instruct a servant to do or perform a nondelegable or nonassignable duty, and escape liability if the servant neglects to perform such duty, in case injury results to the employee." *Riggs v. Mfg. Co.*, 190 N. C., at p. 259.

The superintendent of defendant, Walter Scott, in the exercise of due care to provide a reasonably safe place for plaintiff and the men to work, had placed a watchman, one White, on the side of the mountain for the express purpose of protecting plaintiff and the workmen. This watchman could see both the engineer in charge of the movement of the cable and the men working. Neither the workmen nor the engineer could see each other. When the heavy rock was hitched or hooked to the cable the plaintiff gave the signal to the watchman and in that way the workmen could get out of the way of the rock being dragged and hoisted. In the present case the watchman gave the signal to the engineer without authority from plaintiff, and plaintiff in the emergency in fleeing from danger was injured. It may be inferred from all the facts as disclosed by the record that the work was dangerous and that was the reason the

company placed the watchman to guard the workmen. The court below left this aspect to the jury, and in this we see no error. Under the facts and circumstances of this case, the watchman was an *alter ego.*

In *Odom v. R. R.*, 193 N. C., at p. 444, speaking to the subject in an emergency or imminent peril, it is said: "Nor can it be said, as a matter of law, from the evidence appearing on the present record, that plaintiff's intestate's alleged contributory negligence was such as to bar a recovery. In *Dyer v. Erie Ry. Co.*, 71 N. Y., 228, it was held (as stated in the last head-note): 'The mere fact that a person jumps from a vehicle in which he is traveling, where there is imminent danger of its coming in collision with an approaching train at a crossing, does not bar a recovery against the railroad corporation, although it appears that he made a mistake and would have escaped injury had he remained quiet.' " *Riggs v. Mfg. Co., supra*, at p. 260.

We think the facts in this case distinguishable from *Michaux v. Lassiter*, 188 N. C., 133. In the present case the watchman was a servant or *alter ego* of defendant for a special purpose—to give signals. He was a part of defendant's organization to protect the workmen. Plaintiff had no control over him. He was placed there by defendant, as it were a watchman on the tower to guard the workmen from danger. The false signal he gave was a means by which plaintiff was injured. The court below gave the contentions of the parties, charged the law fully applicable to the facts. The charge covered fully negligence, proximate cause, contributory negligence, assumption of risk, fellow-servant doctrine. We find

No error.